403 P.2d 573

**Anna Jean WHITNEY, Plaintiff-Appellant,**

**v.**

**CONTINENTAL LIFE AND ACCIDENT COMPANY, a corporation, Defendant-Respondent.**

**No. 9467.**

Supreme Court of Idaho.

June 21, 1965.

Hall & Rowett, Mountain Home, for
plaintiff-appellant.

Langroise, Clark & Sullivan, Boise, for defendant-respondent.

SMITH, Justice.

This is an appeal from a judgment of involuntary dismissal granted under I.R. C.P. 41(b), in favor of respondent, and against appellant who instituted this action, seeking recovery under an alleged group life insurance contract. The trial court granted respondent's motion for involuntary dismissal at the conclusion of the submission of appellant's case to the court sitting with a jury. The principal issue presented on the appeal is whether certain negotiations between (1) appellant's decedent husband, (2) Idaho Movers and Warehousemen's Conference, and (3) respondent, resulted in group life insurance coverage of appellant's husband.

Appellant in her complaint alleged that she is the beneficiary named in a written application executed by her husband, Wayne E. Whitney, for group life insurance in respondent insurance company, and that by its oral "binder," respondent insured her husband's life in the sum of $10,000.

Appellant alleged that respondent about October, 1959, submitted a bid to Stein-McMurray Insurance Agency, insurance brokers, to write group life insurance for owners and executives of members of Idaho Movers and Warehousemen's Conference, which bid the Conference accepted; that Mr. Whitney, prior to his death, was manager of Whitney Transfer and Storage

Company, a member of the Conference; that Mr. Kohout, respondent's group insurance manager, verbally assured Stein-McMurray Insurance Agency that the insurance coverage would be binding from December 1, for applications written in December, 1959; that acting solely in reliance upon representations of such coverage Stein-McMurray Insurance Agency commenced writing group insurance applications, and that during December, 1959, appellant's husband, Wayne E. Whitney, executed such an application for $10,000 group life insurance and named appellant his beneficiary; that thereafter about January 20, 1960, Mr. Whitney paid premiums for such insurance as billed by the Conference; that on February 6, 1960, before respondent had issued a master insurance policy Mr. Whitney died, and that appellant filed with respondent proof of death of her husband, and made claim for the insurance which respondent refused to pay.

Appellant in her second cause of action alleged that respondent is estopped from denying the validity of her claim, in that respondent verbally authorized the agent selling the insurance to make membership contracts with each member of the group applying for such insurance, binding and immediately effective upon the signing of an application for insurance by the member. Appellant further alleged that respondent knew or should have known of the agent's statements that the insurance was to be in effect immediately upon signing the application and that Mr. Whitney relied upon such statements. Appellant additionally alleged that Mr. Whitney's application was submitted to respondent about December 27, 1959, but that respondent never notified Mr. Whitney that it had rejected his application for insurance or that the insurance coverage was not in effect or had been discontinued, and that in such a case Mr. Whitney could and would have procured other life insurance prior to his death.

Respondent in its answer denied the material allegations of the complaint. It then alleged that it submitted a proposal to write group life insurance on all the owners and executives of members of Idaho Movers and Warehousemen's Conference, subject to the fulfillment of contingent requirements as conditions precedent to the insurance becoming effective, as follows:

(a) that at least thirty-five applications must be received by respondent in proper form and from qualified applicants, and

(b) that all owners and executives of members of the Conference, who are insured under the group life insurance policy with respondent, must submit proper applications.

Respondent then alleged that no condition was ever met; that no premiums were

ever paid to it for such group life insurance nor for any life insurance coverage upon the life of Wayne E. Whitney; that neither Stein-McMurray Insurance Agency nor one Byron Erstad were respondent's agents, and that neither had any authority to bind respondent.

Respondent then alleged that prior to the time of Mr. Whitney's death, respondent cancelled and terminated its proposed offer to write group life insurance for the Conference; that the group life insurance never went into effect; nor were any of the proposed insureds, including Mr. Whitney, ever covered by insurance; and that the purported group life insurance for the owners and executives of members of the Conference is unlawful and void, and in violation of the provisions of I.C., Title 41, ch. 16, as then in force and effect.

 A judgment of nonsuit or dismissal is proper only where there is an entire absence of testimony tending to establish the plaintiff's case. Sturgis v. Garrett, 85 Idaho 364, 379 P.2d 658 (1963); Nissula v. Southern Idaho Timber Protective Ass'n, 73 Idaho 37, 245 P.2d 400 (1952). In determining such question, the evidence must be viewed in the light most favorable to the plaintiff, Sturgis v. Garrett, supra; Anderson v. Blackfoot Livestock Commission Co., 85 Idaho 64, 375 P.

2d 704 (1962); Bancroft v. Smith, 80 Idaho 63, 323 P.2d 879 (1958).

The facts, considered in the light most favorable to plaintiff, are as follows:

Wayne E. Whitney, prior to his death, was a partner in the moving and transfer business known as Whitney Transfer and Storage, Mountain Home, Idaho. He also was a member and director of Idaho Movers and Warehousemen's Conference, a voluntary association of businesses engaged in the transfer and storage business in Idaho. Sometime before November, 1959, the Conference contacted Byron Erstad, then an employee of Stein-McMurray Insurance Agency, about obtaining additional group life insurance for the owner-executive members of the Conference. Erstad previously had dealt with group life insurance for the Conference. He obtained a list of key executives and owners, complete with their ages, and submitted the list to various insurance companies, including respondent. Mr. Kohout, who at the time was group insurance enrollment manager of respondent, quoted the Conference certain rates for the life insurance, as well as for accidental death and dismemberment. The Conference accepted respondent's quotation and agreed to purchase $10,000.00 life insurance per qualified Conference member. The original effective date was to be November 1, 1959; but only four people

**102**

were enrolled during November. Subsequently the effective date was changed to December 1, 1959.

 Concerning the change of effective date from November 1 to December 1, and whether Mr. Kohout gave Mr. Erstad an oral binder of insurance for the persons enrolled during November, Mr. Erstad, appellant's witness, testified on redirect examination:

"Q. Mr. Sullivan asked you concerning whether or not, Mr. Kohout told you that the group had to be written up in 31 days, when you went to see Mr. Kohout, in December, 1959, and asked him concerning the binding, this coverage, did he at that time tell you that all of the group had to be written up in the 30-day period?

"A. Well, * * * when I got bogged down in November I went to Paul [Kohout] and asked him to extend this binder for another 31 days and he said yes, so I understood this thing was to be done in the 31 days, that was Paul's understanding, and mine together, * * *."

The foregoing testimony constituted an admission on the part of appellant's witness, Mr. Erstad, that he knew of respondent's requirement that the group insurance enrollment be completed within 31 days of the effective date, whatever that date

was. Erstad did, however, testify that Kohout gave him authority to bind the Company. In our consideration of the judgment of dismissal granted by the trial court, we must consider such testimony as true.

December 15, 1959, Erstad obtained a signed application card from Wayne E. Whitney for $10,000.00 of group life insurance. Erstad advised Whitney that the coverage was effective as of December 1, 1959. Appellant was named beneficiary of her husband on the enrollment card. Whitney's application, together with other enrollment cards, was sent to respondent on December 28, 1959. Additional cards were sent respondent during January and February of 1960. Whitney, meanwhile, sent a check for premiums for the months of December, 1959, and January, 1960, covering the personnel of Whitney Transfer and Storage Company, including Whitney, to Idaho Movers and Warehousemen's Conference. The Conference, in turn, was to make premium payment to respondent.

On Friday, February 5, 1960, Robert Cecil, president of respondent company, informed Erstad that respondent did not wish to carry the group insurance on the Conference because the group had never "qualified." Erstad then testified to a conversation with Kohout that same day during which Kohout reassured Erstad there would be no problem, at least over the

weekend, while "we were getting this thing ironed out." Whitney died on February 6, 1960, during the weekend.

Monday, February 8, 1960, Cecil, Kohout, Erstad, and Stein of Stein-McMurray Insurance Agency, who was Erstad's employer, met in conference. At that time Cecil, in a discussion concerning the alleged insurance coverage of the Conference, stated (as testified by Erstad) that "if this really was the kind of group we wanted to insure we would go ahead and pay the claim and continue the coverage, he said, we don't want it * * *."

Respondent having declined to pay the amount of the alleged policy on Mr. Whitney, appellant brought this action. After plaintiff rested her case, respondent moved for, and obtained, a judgment of involuntary dismissal, from which appellant took this appeal.

Respondent, in support of the involuntary dismissal, points to I.C., Tit. 41, ch. 16, Sess. Laws '53, ch. 113, p. 148, in effect at the time the related transactions took place. That Act in part reads:

"Section 1. GROUP LIFE INSURANCE — REQUIREMENTS.— 1. No contract of life insurance shall hereafter be delivered or issued for delivery in this state insuring the lives of more than one individual unless to one of the groups as provided for in this act, and unless in compliance with the other provisions of this act.

\* \* \* \* \* \*

"Section 7. TRUSTEE GROUPS. —The lives of a group of individuals may be insured under a policy issued to the trustees of a fund established in this state by two or more employers in the same industry, provided a majority of the employees to be insured of each employer are located within this state, or to the trustees of a fund established by one or more labor unions, or by one or more employers in the same industry and one or more labor unions, which trustees shall be deemed the policyholder, to insure employees of the employers or members of the unions for the benefit of persons other than the employers or the unions, subject to the following requirements:

\* \* \* \* \* \*

"(b) The premium for the policy shall be paid by the trustee wholly from funds contributed by the employer or employers of the insured persons, or by the union or unions, or by both. No policy may be issued on which any part of the premium is to be derived from funds contributed by the insured persons specifically for their insurance. The policy must insure all eligible persons, or all except any as to whom

evidence of individual insurability is not satisfactory to the insurer.

"(c) The policy must cover at date of issue at least one hundred (100) persons and not less than an average of five persons, other than individual proprietors or partners, per employer unit; and if the fund is established by the members of an association of employers the policy may be issued only if (1) either (a) the participating employers constitute at date of issue at least sixty per cent (60%) of those employer members whose employees are not already covered for group life insurance or (b) the total number of persons covered at date of issue exceeds six hundred (600); and (2) the policy shall not require that, if a participating employer discontinues membership in the association, the insurance of his employees shall cease solely by reason of such discontinuance."

The record in this cause shows that the group policy, had it been issued to the Conference, would not have met the mandatory legal requirements of the law as above set forth, in particulars mainly as follow:

Erstad testified that *in some cases the employees were contributing part of the premium.* The law forbids such practice.

·The policy, to qualify under the then existing law, must have covered at least 100 persons. This requirement was not met in that only 27 enrollment cards of prospective insureds were submitted.

Such a group policy at the time of issuance must cover not less than an average of 5 persons, other than the individual proprietors or partners, per employer unit. (See I.C. § 41–1611(c) above quoted.) This requirement was not met.

The applicable law as hereinbefore set forth prohibited the issuance of a master group policy under the circumstances mentioned.

■ A contract prohibited by law is illegal and unenforceable. Hancock v. Elkington, 67 Idaho 542, 186 P.2d 494 (1947); McFall v. Arkoosh, 37 Idaho 243, 215 P. 978 (1923); Zimmerman v. Brown, 30 Idaho 640, 166 P. 924 (1917); 12 Am.Jur., Contracts, §§ 159, 160; 17 Am.Jur.2d Contracts, §§ 167, 168.

· Appellant asserts that an insurance carrier is estopped from denying the validity of an insurance contract on the basis that it is illegal and unenforceable. The only Idaho case cited in support of this contention is Merrill v. Federal Crop Ins. Corporation, 67 Idaho 196, 174 P.2d 834 (1946). That case announced the rule that an insurance company will not be permitted to defeat a recovery upon a policy issued by it, by proving the existence of facts which

would render it void, where it had full knowledge of such facts *when the policy was issued*. There, the insured issued a policy to claimants on crops which were uninsurable under certain federal regulations. The insurer had written the policy upon the recommendation of Bonneville County Agricultural Conservation Committee, who knew the facts which would render the insurance contract void. The Court imputed such knowledge of the Committee, as the insured's agent, to Federal Crop Insurance Corporation, and held that since the Corporation knew such facts when it issued the policy, it could not claim invalidity of the policy.

The case at bar is distinguishable from the Merrill case, supra. No master group insurance policy was ever issued herein. When the insurance was solicited, no facts were apparent which would put respondent on notice of non-conformity to the law in the event a policy ultimately be issued. Respondent, in fact, declined the coverage when it became aware of the pitfalls involved and particularly of the failure of the proposed group plan to conform with the requirements of the law. Nor is there any evidence indicating that respondent in anywise intended to perpetrate fraud. On the contrary, a letter written to Mr. Erstad by Mr. Cecil, respondent's president, points out that respondent did not desire to write such insurance for various reasons, including lack of coverage qualifications under the law for the group policy.

If a contract is void as against public policy, the court will refuse to enforce it and will leave the parties in the identical situation in which it finds them, and the contract cannot be treated as valid by invoking estoppel. Worlton v. Davis, 73 Idaho 217, 248 P.2d 810 (1952); A. C. Frost & Co. v. Coeur d'Alene Mines Corp., 61 Idaho 21, 98 P.2d 965 (1939), rev'd 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. 500 (1941); Deer Creek Highway Dist. v. Doumecq Highway Dist., 37 Idaho 601, 218 P. 371 (1923); McFall v. Arkoosh, 37 Idaho 243, 215 P. 978 (1923); Libby v. Pelham, 30 Idaho 614, 166 P. 575 (1917).

Respondent presented its motion for involuntary dismissal on the ground that upon the facts and the law appellant had shown no right to relief by virtue of non-compliance with I.C., Tit. 41, ch. 16, Sess.Laws '53, ch. 113, p. 148, in effect at the time of the transaction involved in this cause.

The trial court, upon granting the motion, ruled that no findings of fact and conclusions of law need be entered, and that the judgment be entered accordingly.

Appellant, by assignment of error, contends that findings of fact and conclusions of law are required upon the granting of an involuntary dismissal under I.R.C.P. 41(b) inasmuch as I.R.C.P. 52(a) provides "[f]indings of fact and conclusions of law

are unnecessary on decisions of actions under rules 12 or 56 or any other motion except as provided in rule 41(b)."

In a nonjury case, a motion for dismissal presents to the court for determination not only a question of law, whether as a matter of law the plaintiff has presented facts which, if accepted as true would entitle him to relief, but also a question of fact as to whether the court in evaluating the evidence presented, believes that the plaintiff under the facts and the law, has presented a case for relief, regardless of defenses of the defendant not as yet heard. If the court as the trier of the facts, determines that the plaintiff has failed in his burden of proof and grants the motion, such constitutes a determination of the cause on its merits, notwithstanding findings of fact. 2B Barron and Holtzoff, Federal Practice and Procedure, Rules Ed. § 919, p. 151 (1961); 5 Moore's Federal Practice (2nd Ed.) § 41.13[4].

In a jury case, the jury is the finder of the facts, however, if the case is taken from the jury, a motion to dismiss is granted under Rule 41(b) on the theory that plaintiff has failed to establish requisite facts which, under the law, entitled him to relief. A motion for dismissal (or properly, a motion for directed verdict)

presents to the court for determination a question of law, i. e., whether as a matter of law the plaintiff has presented facts which, if accepted as true, entitle him to relief.

Although the trial court did not render findings of fact upon the granting of the motion for involuntary dismissal, this is not error, for we consider the motion as a motion for directed verdict. O'Brien v. Westinghouse Electric Corporation, 293 F. 2d 1 (3rd Cir. 1961); Makowsky v. Povlick, 262 F.2d 13 (3rd Cir. 1959); Kingston v. McGrath, 232 F.2d 495 (9th Cir. 1956).

The purpose of findings is to aid the appellate court by affording it a clear understanding of the basis of the decision of the trial court. Merrill v. Merrill, 83 Idaho 306, 362 P.2d 887 (1961); 2B Barron and Holtzoff, Federal Practice and Procedure, Rules Ed., § 1121, p. 481 (1961).

Here, the record is clear. The basis for the trial court's decision at the close of plaintiff's evidence, of necessity, had to rest on the basis of the illegality of the alleged insurance contract, if such there was. The facts that plaintiff offered to prove, that such a contract was in existence at the time of Whitney's death, are irrelevant since, even assuming a contract existed, the contract would have been illegal and therefore unenforceable.

The judgment is affirmed. Costs to respondent.

McQUADE, C. J., McFADDEN and KNUDSON, JJ., and DUNLAP, D. J., concur.