999 P.2d 902

Daniel Asevedo MARTINEZ, Jr. and
Nancy Martinez, husband and
wife, Plaintiffs–Appellants,

v.

IDAHO COUNTIES RECIPROCAL MAN-
AGEMENT PROGRAM ("ICRMP"), a
reciprocal company domiciled in Boise,
Idaho and its producer James D. Dickin-
son Insurance, Inc. d/b/a Dickinson In-
surance and Financial Services, Defen-
dants–Respondents.

No. 23981.

Supreme Court of Idaho,
Coeur d'Alene, April 1999 Term.

April 28, 2000.

Rehearing Denied April 28, 2000.

Harvey Richman, Coeur d'Alene, for appellants.

Hamlin & Sasser, P.A., Boise, for respondent ICRMP. Geoffrey M. Wardle argued.

Elam & Burke, P.A., Boise, for respondent Dickinson.

Substitute Opinion the Court's Prior Opinion Dated December 17, 1999 is Hereby Withdrawn.

## ON DENIAL OF PETITION FOR REHEARING

KIDWELL, Justice.

This is an insurance policy interpretation case. Plaintiff Daniel Asevedo Martinez was injured in an automobile collision while on duty as a reserve police officer for the City of Rathdrum (City). He recovered a portion of his losses from worker's compensation and then filed a claim under the uninsured motorist provision of the City's insurance policy. The insurance company refused to pay the claim, contending that the injuries to Martinez were excluded from uninsured motorist coverage. The district court granted summary judgment for the insurance company, and Martinez appeals.

### I.

### FACTS AND PROCEDURAL HISTORY

On September 3, 1994, Martinez was injured in a head-on collision with an uninsured motorist while on duty as a reserve police officer for the City. As a result of the accident, Martinez received extensive injuries which required prolonged hospitalization and physical therapy. Martinez collected partial compensation for his injuries under worker's compensation. In an attempt to recover the rest of his damages, he filed a claim with the City's insurance carrier under the uninsured motorist provision of the policy. The City's policy was underwritten by respondent Idaho Counties Risk Management Program (ICRMP), and was sold to the City through the insurance agency of James E. Dickinson

(Dickinson Insurance), which is also a respondent.

ICRMP based its denial of Martinez's claim on two exclusions to the policy: 1) injuries covered by worker's compensation, and 2) to employees of the insured. On May 9, 1995, Martinez and his wife filed a complaint against both respondents for denial of the claim, alleging several theories of liability. They argued that the exclusions from coverage were against public policy, and that the respondents had breached their contract of insurance with the City. They also claimed that Dickinson Insurance had negligently failed to provide the City with adequate insurance, and that Martinez was injured as a third-party beneficiary of the City's policy. Additionally, they sought damages for Martinez's injuries under the policy. Finally, Martinez argued that the exclusions violated the Unfair Claims Settlement Practices Act (UCSPA).

On October 23, 1995, defendant ICRMP filed a motion for summary judgment arguing that Martinez's injuries were excluded from coverage by the terms of the policy. While the district court found that the policy was ambiguous as to the uninsured motorist coverage, it nevertheless granted partial summary judgment for ICRMP and Dickinson Insurance on the breach of contract and UCSPA causes of action. However, the district court reasoned that there were issues of material fact as to the claims regarding the uninsured motorist coverage.

Following the district court's grant of partial summary judgment, the respondents filed a motion to reconsider. They urged that the only issue concerning the uninsured motorist exclusion was one of law rather than of fact, and that the exclusions were not contrary to Idaho law.

On March 7, 1997, Martinez moved the district court for summary judgment, primarily citing the district court's determination that the policy was ambiguous. Martinez reasoned that where the policy was admittedly in force and the exclusion had been ruled ambiguous, there was no legal basis for denying him coverage.

On June 27, 1997, the district court entered summary judgment for the respondents, foreclosing the rest of Martinez's claims. This determination was based on the respondents' original motion for summary judgment of March 9, 1996. Martinez appealed the grant of summary judgment.

## II.

## STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court employs the same standard as that used by the district court originally ruling on the motion. *McKay v. Owens,* 130 Idaho 148, 152, 937 P.2d 1222, 1226 (1997). On review, summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court liberally construes all disputed facts in favor of the non-moving party, and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. *Bonz v. Sudweeks,* 119 Idaho 539, 541, 808 P.2d 876, 878 (1991). If reasonable people could reach different conclusions or draw conflicting inferences from the evidence, summary judgment must be denied. *Id.* However, if the evidence reveals no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law, then the grant of summary judgment is appropriate. *Allen v. Blaine County,* 131 Idaho 138, 140, 953 P.2d 578, 580 (1998).

## III.

## ANALYSIS

A. **The Exclusions to the Uninsured Motorist Coverage Are Illusory and Void as Against Public Policy Under I.C. § 41–2502.**

Martinez argues that the policy issued by ICRMP is ambiguous and as such, should be construed in favor of finding coverage. Martinez also contends that because the exclusions in the policy are so all-inclusive, no

claimant will be able to collect under the uninsured/underinsured motorist provision.

◼ The determination of whether a contract is ambiguous is a question of law upon which this Court exercises free review. *Mutual of Enumclaw Life Ins. Co. v. Lincoln,* 131 Idaho 454, 455, 958 P.2d 1140, 1141 (1997); *DBSI/TRI V v. Bender,* 130 Idaho 796, 802, 948 P.2d 151, 157 (1997); *Kessler v. Tortoise Dev., Inc.,* 130 Idaho 105, 107, 937 P.2d 417, 419 (1997). When this Court finds that language in the policy is ambiguous, this Court must determine "what a reasonable person in the position of the insured would have understood the language of the contract to mean." *City of Boise v. Planet Ins. Co.,* 126 Idaho 51, 55, 878 P.2d 750, 754 (1994).

The policy issued to the City contains the following coverage provisions:

*GENERAL INSURING AGREEMENT*

I. NAMED ASSURED

It is agreed that the unqualified word "Assured" wherever used in this Insurance includes not only the Named Assured but also:

2. under Section III, any person while using an owned automobile or a hired automobile, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Assured or with his permission. . . .

*SECTION III AUTOMOBILE LIABILITY*

*INSURING AGREEMENT*

A AUTOMOBILE LIABILITY: ...

B AUTOMOBILE MEDICAL PAYMENTS: ...

C UNINSURED/UNDERINSURED MOTORIST: uninsured/underinsured motorist insurance shall be afforded in respect of any occurrence to the minimum extent permitted by the law of the State in which each owned or hired automobile is principally garaged, but only if the law of such State required the Assured to have

such insurance and the Assured has otherwise failed to comply with such law.

*EXCLUSIONS APPLICABLE TO SECTION III*

THIS SECTION DOES NOT APPLY:

(a) To bodily injury or property damage which the Assured intended or expected or reasonably could have expected.

(b) To damage or destruction of property owned by the Assured.

(c) To any obligation for which the Assured may be held liable under any workers' compensation, unemployment compensation, disability benefits law, employers liability or under any similar law or to bodily injuries to any employee or to any liability for indemnity or contribution brought by any party for bodily injuries to any employee.

**1. The policy is ambiguous as to uninsured motorist coverage.**

Martinez contends, and the district court stated, that the policy coverage under Section III(C) is ambiguous. This section sets forth the scheme as to when the uninsured/underinsured motorist coverage is applicable. Under Section III(C) uninsured/underinsured motorist coverage is extended in every policy "to the minimum extent permitted by law ... but only if the law of· such State required the Assured to have such insurance and the Assured has otherwise failed to comply with such law." ICRMP has stated in its pleadings that this section should be interpreted to mean simply that if the State of Idaho requires uninsured/underinsured motorist coverage, then such coverage is automatically extended; and if uninsured/underinsured motorist coverage is not required, then no such coverage exists.

Under I.C. § 41–2502, Idaho does not require uninsured/underinsured motorist coverage on all policies. This is the crux of I.C. § 41–2502, which provides in pertinent part that:

No policy insuring against loss resulting from liability imposed by law for bodily injury ... arising out of the ... use of a

motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death as set forth in section 49–117, Idaho Code, ... under provisions approved by the director of the department of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury.... The named insured shall have the right to reject such coverage, which rejection must be in writing....

*Id.*

While under a slightly different set of facts, this Court has ruled that I.C. § 41–2502 does not require uninsured/underinsured motorist protection in every policy. *Miller v. Farmers Ins. Co. of Idaho*, 108 Idaho 896, 898, 702 P.2d 1356, 1358 (1985). In *Miller*, the issue was whether I.C. § 41–2502 required uninsured/underinsured motorist protection in every policy, and if so, whether exclusions to the policy would violate that requirement. *Id.* While the Court found that the claimant was not an insured under the policy, it additionally found that I.C. § 41–2502 does not require uninsured/underinsured motorist coverage. *Id.* ("From [I.C. §§ 41–2502 & 49–233] it is clear that while liability insurance is mandatory, uninsured motorist coverage is not. What is mandatory under I.C. § 41–2502 is that the uninsured motorist coverage be *offered* at the time of purchase of liability insurance." (emphasis in original)).

 Therefore, since uninsured/underinsured motorist coverage is not required under Idaho law, the clear and unambiguous language of Section III(C) leads to the conclusion that the City did not purchase, and was not provided, uninsured/underinsured motorist coverage. However, what seems clear becomes ambiguous when ICRMP argues in its pleadings, and the declarations page affirms, that the City *did* purchase uninsured/underinsured motorist coverage, and that such coverage was in place at the time of the accident. This Court is unable to understand how the City was covered at the time of the accident when the clear language of the policy excludes uninsured/underinsured motorist coverage in states that do not require it. Clearly a policy is ambiguous when those who drafted it cannot agree on its interpretation.

## 2. By use of definitions and exclusions, the policy creates only an illusion of uninsured motorist coverage.

While Martinez agrees that he was excluded from uninsured/underinsured motorist coverage because of the employee exclusion, he urges that the coverage is illusory because every possible claimant can be excluded. Upon reviewing the policy, we find merit to this argument.

To maintain a claim under this policy, a claimant injured in an accident with an uninsured motorist would first need to fit within the definition of an insured under the policy. In the policy issued to the City, the general insuring agreement defines who is an insured for uninsured/underinsured motorist protection.

**Policy Provisions:** (specifically set forth previously)

1. **Using** the vehicle. To be covered under the uninsured/underinsured motorist section, the claimant must have been using the automobile at the time of the accident.

2. **Legally responsible** for the automobile. In addition to using the automobile, the injured party must also have been legally responsible for the use of the vehicle at the time of the accident.

Once both of these requirements have been met, a claimant must then demonstrate that the exclusions do not apply. The exclusions to the uninsured/underinsured motorist coverage are as follows:

**Exclusions:** (specifically set forth previously)

(a) **Reasonably expected.** Any bodily injury or property damage which the City

expected or reasonably could have expected is excluded.

(b) **Insured's property.** Any property owned by the City which is damaged in an accident is excluded from uninsured/underinsured motorist coverage.

(c) **Bodily injuries to Employees.** This excludes any person who could file a claim under workers' compensation, unemployment compensation, disability benefits, employers liability, or for indemnity or contribution by any person for bodily injuries to an employee.

■ Upon review of these requirements and exclusions, it appears that if any actual coverage does exist it is extremely minimal and affords no realistic protection to any group or class of injured persons. The declarations page of the policy contains language and words of coverage, then by definition and exclusion takes away the coverage. The fact that there might be some small circumstance where coverage could arguably exist does not change the reality that, when the policy is considered in its entirety, the City was receiving only an illusion of coverage for its premiums. This Court will not allow policy limitations and exclusions to defeat the precise purpose for which the insurance is purchased. *Bonner County v. Panhandle Rodeo Ass'n, Inc.,* 101 Idaho 772, 776, 620 P.2d 1102, 1106 (1980) ([T]he ambiguous circumstance in which a policy has been issued purportedly providing coverage but with exclusionary provisions which, if applied, would narrow that coverage to "defeat the very purpose or object of the insurance.").

ICRMP has cited several cases wherein this Court has upheld certain exclusions to the uninsured motorist coverage. *See, e.g., Hammon v. Farmers Ins. Co. of Idaho,* 109 Idaho 286, 287, 289, 707 P.2d 397, 398, 400 (1985) (approving uninsured motorist exclusions which limited coverage to vehicles known to be uninsured or "hit-and-run" vehicles that had come into physical contact with the insured person or vehicle); *Miller,* 108 Idaho at 899, 702 P.2d at 1359 (upholding exclusion from uninsured motorist coverage of a relative of the insured who owns an automobile and lives with insureds). However, in each of these cases, this Court was

asked to consider the application of only one exclusion. Our holding in this matter does not conflict with these or other similar decisions. In these prior cases, each policy exclusion, independent of the others, was valid. However, in this case, where the all-encompassing exclusions are used in such a way as to prevent coverage, the policy provision must fail.

In addition to finding that the policy is illusory, we further find for Martinez on the following substantive grounds.

3. **The policy issued by ICRMP is void as against public policy as contained in I.C. § 41–2502.**

■ As explained above, I.C. § 41–2502 requires that each automobile policy of insurance issued in Idaho must be accompanied by an offer of uninsured/underinsured motorist coverage. While the coverage is not mandatory, it can only be rejected in a writing, signed by the insured. *Id.* In the policy issued to the City, the only offer of uninsured/underinsured motorist coverage was contained in Section III(C). This section, as previously explained, provides uninsured/underinsured motorist coverage only if such is mandated. Since uninsured/underinsured motorist coverage is not mandated, the policy by its wording automatically withholds uninsured/underinsured motorist coverage in every policy sold. Therefore, since uninsured/underinsured motorist coverage, under the terms of this policy, will never be provided in Idaho, uninsured/underinsured motorist coverage was never offered to the City when it purchased the policy. Thus, this policy was issued in violation of I.C. § 41–2502.

4. **The policy must be enforced to provide coverage for Martinez.**

■ The general rule is that contracts which violate public policy are illegal and unenforceable. *Miller v. Haller,* 129 Idaho 345, 351, 924 P.2d 607, 613 (1996). When the Court finds that a contract is unenforceable, it will leave the parties in the same situation in which it finds them. *Whitney v. Continental Life and Accident Co.,* 89 Idaho 96, 105, 403 P.2d 573, 579 (1965). This Court

has recognized, however, that finding an insurance contract void and unenforceable may defeat the purpose for which a statute has been enacted. In such a case, the Court has enforced the policy. *Williams v. Continental Life & Accident Co.*, 100 Idaho 71, 74, 593 P.2d 708, 711 (1979).

In *Williams,* the plaintiff was the widow of a debtor who had several life insurance policies issued in connection with various bank loans. *Id.* at 71–72, 593 P.2d at 708–09. The total value of the policies exceeded the $10,000 statutory cap placed on the policies by I.C. § 41–2005. When the debtor died the insurer paid the $10,000 statutory limit, but argued that the remaining two policies were void because they conflicted with the statute. *Id.* Upon review, this Court held that the policy should be enforced because the insurer was estopped from denying the legality of the contract it created. *Id.* at 74, 593 P.2d at 711. This result was just, reasoned the Court, because holding the policy void would frustrate the purpose of the statute. Additionally, the Court found the result fair because there was no "reason why the insured should not reasonably and justifiably rely upon the superior knowledge and expertise of the insurer for full compliance with the law." *Id.*

In the present case, the City purchased a policy from ICRMP that was ambiguous as to the nature and extent of its uninsured/underinsured motorist coverage. Following the reasoning above, we hold that even though the contract is illegal for violating I.C. § 41–2502, justice and fairness require the contract be enforced. ICRMP argues and the declarations page states that its policy provides coverage. This coverage is then taken away by the exclusions. Since the policy creates only an illusion of coverage it is necessary that coverage for this case be afforded to Martinez, and ICRMP is estopped from denying coverage because of the illusion of coverage it has created. Therefore, we remand to allow Martinez to pursue his legal remedies set forth in his original complaint.

## IV.

## CONCLUSION

The insurance contract provisions pertaining to uninsured/underinsured motorist coverage issued to the City of Rathdrum by ICRMP were illusory, and the provisions are further void because of ICRMP's failure to offer uninsured/underinsured motorist protection when the policy was issued. Therefore, we hold that the uninsured/underinsured motorist coverage contained in the policy applies to Martinez's claim. The decision of the district court is vacated and remanded for proceedings consistent with this decision.

Costs are awarded to appellants. No attorney fees are awarded on appeal.

Justices SILAK and SCHROEDER, concur.

Chief Justice TROUT, dissenting.

Because I believe that the insurance contract is not illusory, I respectfully dissent from the Court's opinion in this case. According to the majority opinion, the contract is illusory because, once the ambiguous uninsured motorist provision is construed against ICRMP, the contract purports to provide uninsured motorist coverage but then essentially excludes all persons who could claim such coverage in the policy exclusions. Under the terms of the policy, the Automobile Liability section of the insurance contract extends coverage to "any person using an owned automobile or a hired automobile, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Assured or with his permission,...." The majority interprets this provision as requiring that a claimant under the policy be both using the vehicle *and* legally responsible for the use of that vehicle. Therefore, because the only persons who could qualify as claimants under this language are employees, and employees are denied coverage under the policy exclusions, the majority finds that the contract is illusory.

While I would agree that the majority's interpretation of the contract renders the

contract illusory, I believe that this interpretation is unnecessarily narrow. Under the ordinary rules governing the interpretation of contracts, "[i]f the contract is clear and unambiguous, the court gives effect to the language employed according to its ordinary meaning." *Bilow v. Preco, Inc.*, 132 Idaho 23, 27, 966 P.2d 23, 27. In my view, the ordinary meaning of the policy extends coverage not just to any person using *and* legally responsible for the use of a City owned or hired vehicle, but rather to any person using the vehicle, *as well as* any person or organization legally responsible for the use of that vehicle. I believe that this interpretation is mandated by the use of the word "organization" in the second part of the sentence. Clearly an organization cannot "use" the vehicle, but they can be legally responsible for its use. Therefore, the use of the word "organization" indicates that this provision was intended to make it clear that, in the case of an accident in which the person using the City vehicle is at fault, the contract will cover not just a suit against the City and the person operating the vehicle, but also the person or organization who authorized the use of the vehicle. Consequently, in order to claim coverage under the contract, a claimant would only have to fall under one of the two categories—that they were a person using the vehicle, or that they were a person or organization legally responsible for the use of the vehicle. Thus, the contract provides coverage, specifically uninsured motorist coverage, to any person, not a city employee, who is using a city owned or hired automobile. Under this interpretation, uninsured motorist coverage would therefore be extended to any non-employees riding in City owned vehicles, a significant group of people.

Therefore, because I believe that the contract extends coverage to a significant number of people, I believe that the contract is not illusory. Consequently, I would affirm the district court's grant of summary judgment to ICRMP.

Justice WALTERS, concurring in Chief Justice TROUT'S dissent and writing specially.

I agree with Chief Justice Trout's analysis in this case and particularly concur in her determination that—contrary to the conclusion asserted by the majority—the insurance policy in question does not require that a person both use the vehicle *and* be responsible for its use before coverage attaches. The majority reaches its conclusion as an adjunct to finding that the policy is illusory. I disagree with that approach and suggest, instead, that it would be more reasonable to uphold the validity of the policy. Accordingly, I would construe the policy to afford coverage.

An authorized person obviously can "use" an automobile by riding in it, without independently also being "responsible" for the vehicle's use. Such a person should be afforded coverage under the terms of the policy as well as someone who may have a right to coverage flowing from that person's responsibility for the use of the vehicle. Common examples of such users who might be transported in a city-owned police vehicle might be prisoners, juvenile detainees, and persons committed to mental facilities and who are being transported to detention destinations; persons who might be transported to medical facilities in emergency situations; nonemployee passengers, such as family members, who are not covered by worker's compensation; city-sponsored senior citizen transportation programs; the user of a city vehicle by loan from the city where the user is not an employee of the city; nonemployee passengers who are allowed to ride with city officials on business trips to attend conferences; the use of the city vehicle in a parade by a nonemployee; a repairman road-testing the vehicle, as a passenger, after working on the vehicle; the use of a vehicle commandeered by a state patrolman as a passenger; ride-along programs for Boy Scouts or high school students learning about law enforcement activities; and hitch-hikers who have been given a ride by an authorized operator of the vehicle.

These examples demonstrate the purpose behind the coverage provision of the policy. The policy affords coverage to people who might be injured in an accident with an uninsured motorist, while riding in a city vehicle and without being "responsible" for

use of the city vehicle. The additional exclusion for employees, who are limited to the worker's compensation law in their claims against the city, is reasonable and not illusory. There should not be coverage under the policy for Martinez, who was injured by an uninsured motorist, while Martinez was acting in the course of his employment as a city patrolman.