118 P.3d 153

Lawrence P. CRNKOVICH and Naola Crnkovich, Plaintiffs–Appellants,

v.

COLUMBUS LIFE INSURANCE COMPANY, a foreign corporation, and Does 1 to 10, inclusive; Vance Schwab, individually; David Horsley, individually; and Daniel Schwab, dba The Daniel Schwab Insurance Agency, a sole proprietorship, Defendants–Respondents.

No. 25938.

Court of Appeals of Idaho.

June 25, 2001.

Review Denied Sept. 25, 2001.

McGrath, Smith & Associates, Idaho Falls, for appellants. Bryan D. Smith argued.

Merrill & Merrill, Pocatello, for respondents. Stephen S. Dunn argued.

LANSING, Judge

Crnkovich sued Columbus Life Insurance Company, Inc. (Columbus) in an effort to rescind a $100,000 universal life insurance policy, for which the premium was fully paid, on the ground that Columbus did not possess a certificate of authority to transact insurance in Idaho when it issued the policy to Crnkovich.[1] The district court granted summary judgment dismissing the action, and Crnkovich appeals. We reverse and remand the case for further proceedings.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Crnkovich, an Idaho resident, obtained a $1,000,000 term life insurance policy in 1992 from Columbus through a Columbus agent who had an office in Afton, Wyoming. In April 1993, Crnkovich applied for a reduction in the face value of the policy to $100,000, and he eventually obtained a universal life insurance policy in that face amount for a fully paid premium of $12,000. At the time the policy was issued, Columbus was not authorized to conduct insurance business in Idaho. The parties dispute whether the policy was solicited and issued in Idaho or in Wyoming, but for purposes of Columbus' subsequent summary judgment motion, the district court assumed that the transaction occurred in Idaho. In 1995, two years after issuing the universal life policy to Crnkovich, Columbus received a certificate of authority to sell insurance in Idaho. In April 1996, Crnkovich learned that Columbus did not possess a certificate of authority from the

Idaho Department of Insurance when he obtained his universal life policy. In January 1997, he filed a complaint against Columbus and its agents, seeking a declaration that the universal life insurance policy was void *ab initio* and requesting the return of his premium.

Columbus answered, denying most allegations, but admitting that it did not have a certificate of authority to transact insurance business in Idaho when Crnkovich purchased his universal life policy. After the defendants had answered, alleging that the insurance policy had been sold in Wyoming, Columbus filed a motion for summary judgment. In support of its motion, Columbus argued that the insurance contract was valid even if the transaction occurred in Idaho. Crnkovich responded with an affidavit asserting that Columbus' agent had been in Idaho when he had solicited Crnkovich to purchase insurance, gave Crnkovich a blank insurance application, and received the application back after it had been signed by Crnkovich. Crnkovich's affidavit alleged that the application was later altered to state that it was executed in Afton, Wyoming.

The district court granted summary judgment to Columbus, ruling that the policy was not subject to rescission even if it was solicited and sold in Idaho. Thereafter, the court issued an Idaho Rule of Civil Procedure 54(b) certificate, which allowed Crnkovich to appeal the summary judgment in favor of Columbus without awaiting the completion of proceedings against the co-defendants.

## II.

### ANALYSIS

■ When this Court reviews a decision granting summary judgment, it utilizes the same standard employed by the trial court in ruling on the motion. *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 718, 918 P.2d 583, 587 (1996); *City of Chubbuck v. City of Pocatello*, 127 Idaho 198, 200, 899 P.2d 411, 413 (1995). Summary judgment is proper "if the pleadings, depositions, and ad-

---

1. Crnkovich named as co-defendants the Afton, Wyoming business that sold him the policy and its employees. The issues raised in this appeal, however, are limited to defendant Columbus.

missions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). *See also Avila v. Wahlquist*, 126 Idaho 745, 747, 890 P.2d 331, 333 (1995). Because Columbus assumes, for the purposes of this motion only, that the insurance transaction occurred in Idaho, there exists no material issue of fact, and we are presented with only a question of law, a matter on which we exercise free review. *See Regjovich v. First Western Inv., Inc.*, 134 Idaho 154, 158, 997 P.2d 615, 619 (2000); *Van Berkem v. Mountain Home Dev. Co.*, 132 Idaho 639, 641, 977 P.2d 901, 903 (Ct.App. 1999).

The sole legal issue raised by Columbus' motion is whether an insurance policy issued in violation of Idaho Code § 41–305(1) may be rescinded by the insurance purchaser because the insurance policy is illegal. Section 41–305(1) prohibits insurers and their agents from directly or indirectly transacting insurance business in this state unless so authorized by a certificate of authority issued to the insurer by the director of the Department of Insurance. Neither that section nor any other statute, however, specifies whether a policy written in contravention of that section is void as an illegal contract or is valid and enforceable by either party. Crnkovich contends that because Columbus was not authorized to sell life insurance within this state when the policy issued, the policy is void *ab initio* and he is entitled to a return of his premium. Columbus responds that because the Idaho insurance statutes do not declare policies issued without a certificate of authority to be void, they are valid and enforceable notwithstanding the statutory violation. Columbus points out that a company transacting insurance business without a certificate of authority is subject to criminal and civil penalties pursuant to I.C. §§ 41–117 and 41–117A, and that the Idaho statutes do not provide the further "penalty" of making the policies void or voidable.

As a general rule, a contract that is violative of the law is illegal and unenforceable. *Whitney v. Continental Life & Acc. Co.*, 89 Idaho 96, 104, 403 P.2d 573, 578 (1965). If a contract violates public policy, a court will generally refuse to enforce it and will leave the parties in the situation in which it finds them. *Id.* at 105, 403 P.2d at 579.

The Idaho Supreme Court departed from this general rule, however, in *Williams v. Continental Life & Acc. Co.*, 100 Idaho 71, 593 P.2d 708 (1979). In that case, the Court recognized an exception to the unenforceability doctrine where insureds or beneficiaries seek to enforce illegal insurance contracts. In *Williams*, a bank issued a series of credit life insurance policies on the life of a borrower in an aggregate amount that exceeded a statutory limit of $10,000. When the insured debtor died and the beneficiary sought to enforce the policies, the insurer refused to pay proceeds in excess of $10,000 on grounds that the policies for the excess were void for violation of the statute. The Supreme Court rejected the insurer's argument and held that the unlawful policies would be enforced at the request of the beneficiary. The Court ruled: "An innocent plaintiff may recover on an illegal agreement *which is not declared void by statute*. Such innocence exists where the plaintiff is justifiably ignorant of the circumstances causing the illegality." *Williams*, 100 Idaho at 73, 593 P.2d at 710 (quoting 14 S. WILLISTON, CONTRACTS § 1631 (3d ed.1972) (emphasis in original)). The Court further explained:

> If a bargain is illegal, not because a performance promised under it is an illegal performance, but only because the party promising it is forbidden by statute or ordinance to do so, the prohibition is aimed at that party only and he is the only wrongdoer. The performance itself is not even *malum prohibitum*, much less is it *malum in se*. The other party, being himself subject to no prohibition or penalty, may even be one of the class of persons for whose protection the prohibitory statute was enacted.
>
> In these cases the refusal of all remedy against a party to the illegal bargain would penalize the very persons for whose benefit the making of such a bargain is prohibited or declared illegal. In such cases, in order to attain the purposes of the law, the courts have frequently enforced the bar-

824

gain by one or more of the usual remedies, in favor of a party for whose benefit the law was intended and against a party toward whom the prohibition or penalty was directed.

. . . .

Inasmuch as there is no statute declaring the policies in this case void, it seems only fair and just that the foregoing principles be applied and that appellant be held estopped from asserting the illegality of its bargained for policies.

*Id.* at 73–74, 593 P.2d at 710–11 (quoting 6A A. CORBIN, CONTRACTS § 1540 (1962)).

■ In the present case, the district court relied upon the *Williams* decision in holding that Crnkovich could not challenge the validity of his insurance policy. The district court reasoned that because Crnkovich was entitled to exercise his rights under the policy pursuant to the holding in *Williams,* he should not be allowed to rescind the policy, receive a refund of his premium, and walk away from the contract.

We view the district court's rationale to be incorrect. The substance of the district court's reasoning is that because *Williams* holds that an insured may obtain enforcement of an illegal policy, such policies must be also enforceable by the insurance company against a protesting insured. That reasoning is contrary to the rationale of *Williams,* which is grounded upon the culpability of the insurance company that violated the insurance laws and the innocence of the customer who was justifiably ignorant of the illegality. In those circumstances, our Supreme Court reasoned that the insurer should be estopped from raising its own illegal conduct as a defense to enforcement of its obligations under the policies. Nothing in *Williams* suggests that the innocent insured is likewise estopped from seeking to avoid an insurance contract on the basis that the contract violates the law.

In our view, a more instructive precedent is *Messerli v. Monarch Memory Gardens, Inc.,* 88 Idaho 88, 397 P.2d 34 (1964). In that case, the defendant burial services company sold "pre-need" burial services contracts on a time-purchase basis. The plaintiffs, who had entered into such contracts, refused to make payments and initiated lawsuits for the rescission of their contracts. It was the plaintiffs' position that the contracts constituted insurance policies that were sold unlawfully because the burial service company was not qualified to conduct insurance business within this state. The Supreme Court agreed that the contracts amounted to "insurance," and affirmed the trial court's holding that because the seller had not qualified to conduct insurance business in this state, the contracts were void and unenforceable.

■ Reading *Messerli* and *Williams* together, we conclude that under Idaho law, an insurance contract sold in Idaho by a company that is not authorized to conduct insurance business in this state is either enforceable or voidable at the option of the insured or beneficiary. Therefore, the district court erred in holding the Columbus policy valid and enforceable in the face of the insured's claim for rescission.[2]

Because the district court held that the policy was not voidable, the court did not address subsidiary issues, such as whether the doctrine of laches may preclude Crnkovich from pursuing this claim and whether Crnkovich is entitled to restitution of any premium paid or only such portion of the premium that was unearned on the date of commencement of this action. *Compare Forrest Currell Lumber Co. v. Thomas,* 81 N.M. 161, 464 P.2d 891, 895 (1970) (holding that

**2.** The dissent relies upon I.C. § 41–310(2) for the proposition that the insurance policy was valid and could not be set aside at the request of Crnkovich. In our view, the words of § 41–310(2) cannot bear the weight of legislative intent ascribed to them by the dissent. That statute is a measure to raise revenue and prevent tax evasion. It requires any insurance company that previously sold insurance in this state without authority, and which now seeks a certificate of authority, to pay the back premium taxes that would have been paid during the preceding three years if the policies written during that period had been sold lawfully. The statute says nothing about the enforceability of the unlawfully issued policies as between the insurer and its customers. The patent legislative purpose is to collect premium taxes that would otherwise be evaded, and we find nothing in the statute from which could be inferred any legislative intent with respect to the enforceability of the underlying insurance contracts.

insured was entitled to refund of full premium paid for illegal insurance contract) with *Dornberger v. Metro. Life Ins. Co.*, 961 F.Supp. 506, 538–40 (S.D.N.Y.1997) (holding that where insured was entitled to rescission of illegal insurance contract, the insured was entitled only to a partial premium refund, which allowed credit for the value of the insurance coverage received during the time the policies were in effect). Such issues may be addressed by the district court on remand.

For the foregoing reasons, we reverse the summary judgment holding that the insurance policy must be enforced against both parties even if it was issued in violation of Idaho law, and we remand the case to the district court for further proceedings.

Judge Pro Tem WOODLAND concurs.

Chief Judge SCHWARTZMAN, dissenting:

I respectfully dissent. Crnkovich has not raised a claim that his insurance contract with Columbus is *voidable;* he argues it is *void ab initio* as an illegal contract for non-compliance with I.C. § 41–305(1) of the insurance code. An illegal contract is one that rests on illegal consideration consisting of any act or forbearance that is contrary to law or public policy. *Quiring v. Quiring,* 130 Idaho 560, 566, 944 P.2d 695, 701 (1997); *see also Miller v. Haller,* 129 Idaho 345, 351, 924 P.2d 607, 613 (1996); *Kunz v. Lobo Lodge,* 133 Idaho 608, 611, 990 P.2d 1219, 1222 (Ct. App.1999). Whether a contract is void as against public policy is a question of law for the court to determine from all the facts and circumstances of each case. *Quiring,* 130 Idaho at 566, 944 P.2d at 701; *Stearns v. Williams,* 72 Idaho 276, 283, 240 P.2d 833, 837 (1952). Public policy may be set forth in statutes, judicial decisions or the constitution. *Stearns,* 72 Idaho at 287, 240 P.2d at 840.

In the instant case, neither party argues that the contract rests upon consideration that is illegal or contrary to law or public

policy. Rather, Crnkovich argues that Columbus was not permitted to sell life insurance within the state of Idaho without a certificate of authority from the Idaho Department of Insurance, and that lacking such, Columbus' policy with him is void *ab initio.*

The statutes of this state do not render, and the decisions of our courts have never held, an insurance policy to be void *ab initio* on the ground that the insurer did not possess a certificate of authority as required by I.C. § 41–305. Indeed, just the opposite may be true. Idaho Code § 41–310(2) provides that:

> (2) Any insurer not theretofore authorized in this state which, within three (3) years prior to its application for authority to transact insurance in Idaho has transacted insurance in this state in violation of the laws of Idaho, shall not be granted such authority unless it is otherwise fully qualified therefore, files with the director a written statement sworn to by two (2) of its executive officers of all premiums received by it during such three (3) years with respect to insurance on subjects resident, located or to be performed in Idaho, and pays to the director as an additional fee for the filing of its application for certificate of authority, an amount of money equal to the premium tax which it would have paid to this state with respect to such premiums if it had been an authorized insurer in this state throughout such period.

This provision implicitly recognizes that insurance contracts sold in Idaho without a certificate of authority as required by I.C. § 41–305 are not void *ab initio.*[1] Idaho Code § 41–310(2) encourages insurers not in compliance with I.C. § 41–305 to pay back premium taxes on those contracts entered into before securing a certificate of authority and then apply for a certificate of authority. In doing so, Idaho's insurer authorization scheme employs a "carrot and stick" approach consistent with the public's interest in the integrity of insurance.[2] While *Messerli*

---

1. I express no opinion as to whether such contracts might be voidable at the insistence of the insured up until the time the insurer obtains a certificate of authority.

2. I.C. § 41–113 sets forth the public policy behind Idaho's insurance regulatory scheme:

> The business of insurance is one affected by the public interest, requiring that all persons

*v. Monarch Memory Gardens, Inc.,* 88 Idaho 88, 101–105, 397 P.2d 34, 42–45 (1964), would appear to allow rescission of an insurance contract with an unqualified insurer, the public policy consideration of preventing consumer fraud is not implicated in the present case where the insurer was fully qualified—possessing a valid certificate of authority—at the time Crnkovich brought suit.

Although I agree with the district court's conclusion that an insurer's failure to obtain a certificate of insurance does not render its insurance contracts void *ab initio,* I reach it as a matter of statutory interpretation. *Williams* and related cases do not address the situation encountered here, where the insured, not the insurer, is seeking to void the contract under a theory that the contract was void *ab initio.*

Columbus obtained a certificate of authority in 1995, nearly two years *before* Crnkovich filed the instant suit. Having received the benefit of the bargain—insurance coverage since 1993—Crnkovich cannot point to any injury sustained by Columbus' previous noncompliance. Under these facts, an insurance contract is not void *ab initio* where consideration has been fully exchanged by both parties and the insurer obtains a certificate of authority before the insured files suit.

Crnkovich still argues that he is entitled to rescind the insurance contract due to Columbus' prior non-compliance. Rescission is an equitable remedy aimed at restoring the parties to their pre-contract status quo, *Blinzler v. Andrews,* 94 Idaho 215, 485 P.2d 957 (1971), overruled on other grounds, *Barnard & Son, Inc. v. Akins,* 109 Idaho 466, 708 P.2d 871 (1985), and is proper where a mutual mistake of fact is material or fundamental to the creation of a contract, *Murr v. Selag Corp.,* 113 Idaho 773, 777, 747 P.2d 1302, 1306 (Ct.App.1987), or where one party induces the other to enter the contract through fraud. *McEnroe v. Morgan,* 106 Idaho 326, 329, 678 P.2d 595, 598 (Ct.App.1984). The

be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives, and all concerned in insurance transactions, rests the duty of preserving the integrity of insurance.

record does not reflect such fraud or mutual mistake.[3] Accordingly, the district court correctly ruled that the policy was not subject to rescission.

I would affirm the district court's ruling that Columbus' contract with Crnkovich was legally binding and that rescission does not lie in this case.

3. The record, however, is "ambiguous" as to whether Crnkovich actually paid out any money for the 1992 one million dollar term life insurance policy prior to its conversion in 1993 to a fully paid up universal life policy. Apparently, an IRS inquiry brought this whole matter to light.