175 P.3d 195

**Brandon ANDRAE, Plaintiff–Appellant,**

v.

**IDAHO COUNTIES RISK MANAGEMENT PROGRAM UNDERWRITERS, Defendant–Respondent.**

**No. 33250.**

Supreme Court of Idaho,
Boise, November 2007 Term.

Dec. 27, 2007.

---

Filicetti Law Office and Holzer, Edwards & Harrison, Chartered, Boise, for appellant. Kurt D. Holzer argued.

Anderson, Julian & Hull, LLP, Boise, for respondent. Phillip J. Collaer argued.

J. JONES, Justice.

Appellant Brandon Andrae sought underinsured motorist coverage from the Idaho Counties Risk Management Program (ICRMP) for injuries he sustained in a traffic mishap. ICRMP denied coverage and then filed a complaint for declaratory judgment with the district court seeking a ruling absolving it from liability. ICRMP then filed a motion for summary judgment. The district court granted the motion, agreeing with ICRMP's contention that Andrae's injury was not covered under the policy. Andrae appealed to this Court. We affirm.

## I.

On the morning of August 2, 2004, Andrae, a Twin Falls County deputy sheriff, was driving his patrol car to the Sheriff's Office to begin his shift. En route, he came upon a construction zone that had reduced the roadway from four lanes to two. A semi-truck and two cars were pulled off the road with their hazard lights blinking. Andrae stopped to assist. He parked his patrol car fifteen to twenty feet behind the semi, angling the car partially in the lane of traffic in order to create a safety zone. He called dispatch and activated the directional light bar atop his vehicle.

Andrae then emerged from his patrol car. He walked toward the vehicles but stopped to correct a traffic cone lying in the lane of traffic. He grabbed the top of the cone and kicked its heavy base to move it back into place. At that moment, a truck struck him and knocked him unconscious.

Andrae collected the $25,000 maximum limits on the insurance policy the driver carried. He also collected workers' compensation benefits.[1] However, the cost of his injuries exceeded the money he received. Thus, he sought recovery from ICRMP. Twin Falls County carries ICRMP for, among other things, uninsured and underinsured motorist coverage. ICRMP denied coverage for Mason's injuries.

ICRMP sought declaratory relief from the district court in order to absolve itself of liability. ICRMP filed a motion for summary judgment, which the district court granted, holding Andrae was not covered under the ICRMP policy because he was not actually "occupying" his vehicle at the time he was hit. Under the policy, underinsured motorist coverage was available only if the injured party was occupying an insured automobile at the time of the accident. Since Andrae was not physically in the patrol car, he was not occupying the vehicle. As such, he was not an insured under the ICRMP policy. Andrae appealed to this Court.

## II.

We consider two questions on this appeal: (1) Whether Idaho Code § 41–2502 requires underinsured motorist coverage. (2) Whether Andrae was occupying his vehicle at the time of the accident.

### A.

■ When reviewing an order for summary judgment, the standard of review for this Court is the same standard used by the district court in ruling on the motion. *Watson v. Weick*, 141 Idaho 500, 504, 112 P.3d 788, 792 (2005). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho R. Civ. P. 56(c). If there is no genuine issue of material fact, "only a question of law remains, over which this Court exercises free review." *Watson*, 141 Idaho at 504, 112 P.3d at 792.

### B.

■ Andrae argues that ICRMP cannot write and enforce an insurance policy more restrictive than that required by I.C. § 41–2502. I.C. § 41–2502 dictates the terms for uninsured motorist coverage in Idaho, and it states,

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided ... as set forth in section 49–117, Idaho Code .... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles....

Andrae argues this provision prohibits ICRMP from denying him coverage because his injuries arose from the "use" of his patrol vehicle. Contrary to Andrae's assertion, I.C. § 41–2502 does not apply.

I.C. § 41–2502 is titled "Uninsured motorist coverage for automobile insurance." The text of this provision deals only with uninsured motorist coverage. It makes no mention of underinsured motorist coverage. The two are not synonymous. While this Court has often lumped the two types of coverage together, it has also made clear that they are separate coverages. " 'Uninsured' clearly is not identical to 'underinsured' and a court should not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Blackburn v. State Farm Mut. Auto. Ins. Co.*, 108 Idaho 85, 88, 697 P.2d 425, 428 (1985).

In *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 701 P.2d 217 (1985), the Court engaged in its most extensive discussion of the distinction. There, the plaintiff argued that his insurance company's denial of a claim was void as against public policy. *Id.* at 599, 701 P.2d at 219. The insurance company denied the plaintiff's claim because the accident occurred while the plaintiff was riding his motorcycle, which was an "other

---

1. Andrae later returned to work without restrictions on his duties.

owned vehicle" not covered under the plaintiff's policy. *Id.* "Other owned vehicles" were specifically excluded from the policy's "Underinsured Motorists Coverage." *Id.* He argued this exclusion violated public policy, conflicted with the plain language of the coverage, was vague and ambiguous, and contradicted his "reasonable expectations." *Id.* This Court denied all his claims. "Idaho statutes do not regulate *underinsured* motorist coverage.... [A] statute governing uninsured motorist coverage [I.C. § 41–2502] does not represent any public policy regarding underinsured motorist coverage. Underinsured and uninsured coverage are not identical in either definition or operation." *Id.* at 600, 701 P.2d at 220 (emphasis original). The Court acknowledged that mandatory coverage for underinsured motorists might be desirable, but stated it was the Legislature's prerogative to enunciate such a public policy. *Id.*

In sum, Andrae's argument fails. I.C. § 41–2502 requires minimum coverage only for uninsured, and not underinsured, motorists.

### C.

 Andrae's next contention is that ICRMP cannot deny him coverage because he was "occupying" his patrol car when he was hit. This argument springs from the language of Coverage C of the policy, which states that ICRMP will pay "damages for bodily injury which an insured is legally entitled to recover from the owner or operator of an uninsured/underinsured automobile." The policy defines "insured" as "anyone *occupying* an insured automobile with the permission of the owner." (emphasis added). It is uncontested that Andrae's vehicle was an insured vehicle which he was using with permission. Hence, the only issue is whether he was occupying the vehicle at the time he was hit.

 Insurance policies are contracts, and "the parties' rights and remedies are primarily established within the four corners of the policy." *Featherston By and Through Featherston v. Allstate Ins. Co.,* 125 Idaho 840, 843, 875 P.2d 937, 940 (1994). Whether a contract is ambiguous is a question of law

upon which this Court exercises free review. *Martinez v. Idaho Counties Reciprocal Mgmt. Program,* 134 Idaho 247, 250, 999 P.2d 902, 905 (2000). Like other contracts, insurance policies "are to be construed as a whole and the courts will look to the plain meaning and ordinary sense in which words are used in a policy." *Miller v. Farmers Ins. Co. of Idaho,* 108 Idaho 896, 899, 702 P.2d 1356, 1359 (1985). Finally, where the "policy language is clear and unambiguous, coverage must be determined in accordance with the plain meaning of the words used." *Mut. of Enumclaw Ins. Co. v. Roberts,* 128 Idaho 232, 235, 912 P.2d 119, 122 (1996).

Both parties in this case contend "occupying" unambiguously supports their position. The district court agreed with ICRMP that occupying means "being inside." The court stated, "Since Andrae was not inside the vehicle or even getting out of it at the time he was struck and injured, he was not occupying the vehicle." Andrae contends, however, that occupy has a broader meaning, citing the *Black's Law Dictionary* definition: "**Occupy.** To take or enter upon possession of; to hold possession of; to hold or keep for use; to possess; to tenant; to do business in; to take or hold possession. Actual use, possession, and cultivation." *Id.* at 1079 (6th ed.1991).

Andrae contends that two decisions of this Court support his position. He calls our attention to *Stoddard v. 'AID' Ins. Co.,* 97 Idaho 508, 547 P.2d 1113 (1976), where the Court interpreted policy language defining occupying as "in or upon or entering into or alighting from" a vehicle. *Id.* at 509, 547 P.2d at 1114. The Court ruled that a person is no longer occupying a vehicle when "he has completed all acts normally performed under similar circumstances and has embarked on an entirely different course of conduct." *Id.* at 510, 547 P.2d at 1115. In that case, the Court determined the insured had not completed the process of "alighting from" the vehicle because he emerged from his vehicle only to check on fumes emanating from the vehicle. *Id.* at 511, 547 P.2d at 1116. Further, he was a paraplegic who had an elaborate system he normally employed when getting out of his car to ease his transi-

tion into a wheelchair. *Id.* In that instance, he had not completed his normal process of emerging from the vehicle, leaving his belongings, passenger, and dog inside the vehicle. Thus, the Court held he was still an occupant of the vehicle.

Andrae also points to *Fajen v. Allstate Ins. Co.*, 96 Idaho 886, 538 P.2d 1190 (1975), where we held an insured was not an "occupant" of a vehicle where he witnessed his wife in a car accident just in front of the car he was driving. The definition of occupying was identical to that in *Stoddard.* The insured emerged from his vehicle and ran to assist his wife, injuring himself in the process. The Court held his insurance company was not required to provide him coverage under the uninsured motorist provision of the vehicle he was driving because he was no longer occupying the vehicle.

Neither *Stoddard* nor *Fajen* applies here. In both cases, the insurance policy defined occupying to include entering or exiting the vehicle. The ICRMP policy contains no such definition. The policy merely defines an insured as a person occupying an insured automobile. Thus, the ICRMP policy language appears to be more restrictive in its coverage than the above-noted AID and Allstate policies. The district court correctly determined the policy language to be unambiguous, requiring Andrae's physical presence within the vehicle. Using the plain meaning and ordinary sense of "occupying," a person who has dismounted the vehicle is not occupying it.

It is unfortunate that a member of the law enforcement community, injured while carrying out his official duties, would not have coverage in these circumstances. However, this Court cannot rewrite either the statutes or the language employed in the insurance contract in order to provide relief. The district court correctly decided the issue under the existing circumstances.

## IV.

The order of the district court, granting summary judgment is affirmed. Costs are awarded to ICRMP.

Chief Justice EISMANN, and Justices BURDICK, W. JONES and HORTON concur.

