Miriam **LEGGETT, Individually and as Administratrix of the Estate of Micah G. Leggett and as Parent and Natural Guardian of Zadok M. Leggett; John S. May, Administrator of the Estate of Jeffrey A. Leggett; Adam L. Snyder and Cory L. Snyder, by and Through Their Parents and Natural Guardians, Gary L. Snyder and Dana G. Snyder; Gary L. Snyder and Dana G. Snyder, in Their Own Right, High Industries, Inc., and High Safety Consulting Services, Ltd., Appellees,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Appellants.**

Superior Court of Pennsylvania.

Argued Dec. 9, 2003.

Filed March 2, 2004.

Eric A. Fitzgerald, Philadelphia, for appellants.

James H. Thomas, Philadelphia, Kent D. Mikus, Lancaster, and Chad Rankin, Lancaster, for Leggett, appellee.

BEFORE: KLEIN, BENDER and OLSZEWSKI, JJ.

OPINION BY KLEIN, J.:

¶1 Jeffrey A. Leggett was killed in an automobile crash that also killed one minor son, injured another minor son, and in-

jured four members of the Snyder family who were in another car. Suit was brought against the Estate of Jeffrey Leggett by his minor children and the Snyder family. The Administrator of the Estate of Jeffrey A. Leggett and the others injured or killed in the accident or their representatives (collectively called Plaintiff for this case) filed a declaratory judgment action against National Union Fire Insurance Company of Pittsburgh seeking a declaration that Leggett was covered under his employer's umbrella insurance policy. Leggett was employed by High Safety Consulting Services, Ltd., an affiliated company of the policy holder, High Industries Inc.

¶ 2 We agree with the highly regarded trial judge, the Honorable Louis J. Farina of Lancaster County, that the National Union policy covers Leggett in this accident in that he was acting within the scope of his duties. Further, we agree with Judge Farina that the determination by the Workers' Compensation judge is not collateral estoppel because of the difference in legal standards between Workers' Compensation "scope of employment" and the insurance policy's language "within duties." Therefore, we affirm.

¶ 3 Additionally, because of the uncertainty of the need to file post-verdict motions in declaratory judgment actions, we do not believe *Motorists Mutual Ins. Co. v. Pinkerton*, 574 Pa. 333, 830 A.2d 958 (2003) should be applied retroactively and decline to quash the appeal.

**1. Leggett was acting within his duties of employment at the time of the accident.**

¶ 4 The question of coverage in this case comes from the definition section of the insurance policy. The policy provides coverage for "Named Insureds" and defines a Named Insured, in relevant part as: "5. Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties." There is no dispute that Leggett was an employee. Therefore, the coverage issue turned on whether Leggett was "acting within [his] duties" when the accident occurred.

¶ 5 Leggett had lost his company cell phone. On Saturday, April 10, 2002, Leggett first took his sons to a pre-planned roadside clean-up with their Boy Scout Troop near their home in Lancaster County. Then he and the boys drove to Reading where Leggett was working for High Safety as a safety inspector at Carpenter Technology (CarTech), where he believed he lost the cell phone. One of his sons would call the cell phone number while Leggett would walk about listening for the ring. Leggett tried unsuccessfully to find the phone for about an hour. Leggett and his sons then went to a nearby Taco Bell where Leggett had lunch the day before and thought might have left his cell phone. However, it had not been turned in. He and the boys then had lunch at the Taco Bell. After lunch, Leggett took the boys to a nearby Goodwill Store to look for Boy Scout uniforms and an Army/Navy store for hunting clothes for one of the boys. These were not planned stops, rather simply taking advantage of the opportunity to visit nearby stores. After visiting the stores, Leggett and the boys began the drive home. It was on this drive that the fatal accident with the Snyder family occurred.

¶ 6 As Judge Farina aptly put it, whether Leggett was covered by the policy turns on whether he was acting within his "duties" at the time of the accident. "Duties," however, is not defined in the policy. Words of common usage in an insurance policy are to be construed in their natural, plain and ordinary sense, and we may inform our understanding of

these terms by considering their dictionary meanings. *Madison Construction Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 735 A.2d 100, 108 (1999). Therefore, "duties" must be read in its normal, plain sense.

¶ 7 National Union claims that the term "acting within their duties" is synonymous with the term "course and scope of employment" and as such the court is bound by prior case law defining that term. We believe if National Union wanted an exclusion defined under the term of art "within the course and scope of employment," they would have *used* the term "within the course and scope of employment" rather than saying the insured had to be "acting within [his/her] duties."

¶ 8 We decline to interpret the policy in the narrow manner suggested by National Union. The trial court determined, most appropriately for the purposes of this case, "duty" to mean: "Obligatory tasks, conduct, service or functions that arise from one's position (as in life or in a group)." *Webster's Ninth New Collegiate Dictionary* (1990). We note, too, that *Black's Law Dictionary* (5th ed.1979) defines "duty" in relevant part as a "legal or moral obligation."

¶ 9 In this case, Leggett drove to Reading to search for a company-owned cell phone which he used for his job. We agree with Judge Farina that an employee has a duty to search for company property that he lost. The fact that he did it on a Saturday does not mean that he was any less carrying out a duty of his employment.

¶ 10 It is true that normally one is not acting within the course and scope of his employment commuting to and from work. However, the situation is different when one makes a separate trip on a normal day off to perform the obligation of finding lost property. This is more akin to going from one's office to a job site than the regular commuting from home to the office. The fact that Leggett and the boys did a Scout project before leaving or made two casual, unplanned stops after lunch does not change the basic nature of the trip to Reading, namely, to look for the lost company-owned cell phone. The trip was job-related so the property could be recovered and used on the next work day. We agree with Judge Farina that it is therefore within the "duties" of employment.

**2. The Workers Compensation determination that the accident did not occur "within the scope of [Leggett's] employment" is not due collateral estoppel effect because the standards are different.**

¶ 11 It is true that when a Workers' Compensation claim was filed on behalf of Leggett's family, the Workers Compensation administrative judge found that Leggett was not acting within the "course and scope of his employment." Although it is true that in some circumstances, a Workers Compensation adjudication may have the effect of collateral estoppel in related court trials, the issues must be identical. To be identical, the standards applied in each action must be the same.

¶ 12 In the declaratory judgment action, the issue is a common-sense determination of the interpretation of the language of the policy. 42 Pa.C.S. §§ 7531–41; *Madison Constr. v. Harleysville Ins., supra.* That must be determined under contract law. On the other hand, in Workers Compensation matters, the administrative judge must make determinations under specific Workers' Compensation standards, developed for specialists rather than lay people. The issue of whether an employment contract covers transportation to and from a work site by now has a specific meaning to the workers' compensation specialist, which a layperson would not know. In

contrast, one's obligations or duties to an employer is a broader concept than the Workers' Compensation inquiry into "course and scope." As Judge Farina put it, "There is a distinction between the workers compensation determination and the interpretation of the meaning of the insurance contract that makes a difference." (Trial Court Opinion, 7/16/02, p. 2)

**3. *Pinkerton* should not be applied retroactively to bar the appeal in this case.**

■ ¶ 13 *Motorists Mutual Insurance Company v. Pinkerton*, 574 Pa. 333, 830 A.2d 958 (2003), finally established that if there has been a trial in a declaratory judgment action, post-verdict motions must be filed and an appeal taken only from the final determination of that motion. However, as Madame Justice Sandra Newman noted in *Pinkerton*, there has been much confusion concerning proper post-trial motions procedure in declaratory judgment actions. Therefore, in a leading case, *Chalkey v. Roush*, 569 Pa. 462, 805 A.2d 491 (2002) the Supreme Court determined that its opinion should be applied prospectively only. We believe the same is true with respect to *Pinkerton*, and therefore do not believe it was the intention of the Supreme Court to apply *Pinkerton* retroactively to bar the appeal in this case. When the Superior and Supreme Court are not on the same page in interpreting the rules, one should not bar a litigant from his or her right to have an appeal heard if ultimately it turns out his or her lawyer guessed wrong in deciding whether to appeal from an order immediately or first file post-verdict motions. We note that the Pennsylvania Supreme Court cases dealing with these issues uniformly *allow* the litigant to have his or her case heard.

¶ 14 The history of the cases involving whether or not to file post-verdict motions before filing an appeal to this Court include the following:

1. *Nationwide Mut. Ins. Co. v. Wickett*, 563 Pa. 595, 763 A.2d 813 (2000). In this case, the Supreme Court held that when a declaratory judgment petition is denied on preliminary objections without a trial, post-verdict motions are inappropriate and the losing party has 30 days to appeal.

2. *State Farm Fire and Casualty Co. v. Craley*, 784 A.2d 781 (Pa.Super.2001). On stipulated facts the trial court held that State Farm owed benefits despite a household exclusion clause because the exclusion was against public policy. In an *en banc* decision of this Court, this Court held that the appeal should be quashed because under the Declaratory Judgment Act, the decision was a final order that State Farm should have appealed within 30 days rather than filing and waiting for the disposition of post-trial motions. The majority, unlike Pres. Judge Del Sole's dissent, did not distinguish between a trial on stipulated facts and cases disposed of on summary judgment.

3. *Chalkey v. Roush*, 569 Pa. 462, 805 A.2d 491 (2002). In this case, the Supreme Court held that in equity matters, just as at law, the losing party must file post-verdict motions before appealing; the decision would be prospective only.

4. *Motorists Mutual Ins. Co. v. Pinkerton*, 574 Pa. 333, 830 A.2d 958 (2003). The Pennsylvania Supreme Court reversed this Court's orders in four cases, including *Craley*, which quashed appeals for filing post-verdict motions rather than appealing directly. The Supreme Court adopted Pres. Judge Del Sole's distinction between declaratory judgment cases disposed of on summary judgment and those that are disposed of after trial, be it a full trial or a trial on stipulated facts.

¶ 15 Therefore, at the time the trial court entered its decision in the instant case, *Craley* had not yet been decided by the Supreme Court, although *Chalkey* had. Since *Chalkey* dealt with equity matters and not declaratory judgment matters, it was not clear whether *Craley* had been superseded by *Chalkey*. There was dictum in the majority that cast doubt on whether all declaratory judgment actions were final orders exempt from the need to file post-verdict motions, or only declaratory judgment actions decided without trial on summary judgment motions. Now we know that *Craley* as decided by the Superior Court *en banc* decision was erroneous—but that is by hindsight. The lawyers in this case had to guess, and acted according to the *en banc* holding of this Court rather than *dicta* of the Supreme Court. It would be unjust to penalize counsel for making the wrong choice, and, as in *Craley*, we believe the Supreme Court meant it only to apply prospectively to all declaratory judgment actions. Therefore, we decline to quash the appeal.

¶ 16 Motion to quash denied. Order affirmed.