112 P.3d 825

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
P.A., Plaintiff–Respondent,

v.

Douglas Grant DIXON, Defendant–
Appellant,

and

Clifford D. Barnett, Debra S. Barnett,
Donald E. Olson and Dianna C.
Olson, Defendants.

No. 30398.

Supreme Court of Idaho,
Boise, February 2005 Term.

May 5, 2005.

Nicholas Theodore Bokides, Weiser; Aherin, Rice & Anegon, Lewiston, for appellant. Darrel W. Aherin argued.

Jones, Gledhill, Hess, Andrews, Fuhrman, Bradbury & Eiden, P.A., Boise, for respondent. Scott D. Hess argued.

BURDICK, Justice.

This case involves the interpretation of an insurance contract. While driving a company vehicle insured by National Union Fire Insurance Company of Pittsburgh, PA (National Union), Douglas Dixon hit and killed three people. National Union filed a declaratory action in the district court alleging it had no duty to defend or indemnify Dixon in connection with the underlying action (a wrongful death suit) because Dixon had no rights under the insurance contract. Upon motion for summary judgment, the district court found and concluded that the material facts were not disputed in that Dixon was bar hopping immediately prior to the accident and his conduct did not fall within the language of the insurance policy which limited coverage to employees acting within their duties. Dixon appeals the district court's finding that he was not acting within his duties at the time of the accident. Additionally, Dixon argues that the insurance policy provisions are ambiguous and illusory, therefore the insurance company should defend or indemnify him in the underlying action. We affirm the district court's order granting summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Anderson & Wood Construction Co, (Anderson & Wood) employed Dixon from January 1994 through October 1998. As a foreman, Dixon was required to work for months at a time at job sites located a significant distance from his residence near New Meadows, Idaho. On all but one work as-

signment, Dixon's employer provided him with a company vehicle. Dixon had the company vehicle continuously in his possession for approximately fourteen months before the accident.

On October 6, 1996, the day before Dixon was scheduled to leave for a job site in Washington, he went steelhead fishing taking his own vehicle. On that same day, Dixon consumed approximately five beers, four of which he consumed within a two hour and forty-five minute period before returning home. Dixon arrived home around 7:45 pm. Between ten and twenty minutes later, Dixon drove the company vehicle into New Meadows to refuel so he could leave the next day for the Washington job site.

After fueling the vehicle, Dixon stopped at two bars where he drank beer and visited with friends. Thereafter, Dixon walked to a friend's house before driving towards his home approximately an hour and a half later. During this time Dixon consumed several more beers and became intoxicated. On his way home Dixon failed to stop at a stop sign and as a result he struck another vehicle, killing all three occupants. Subsequently, Dixon pleaded guilty and was sentenced to three counts of felony vehicular manslaughter.

Dixon's employer maintained written company policies prohibiting alcohol and drug use while on the job or with the use of company vehicles. Dixon was aware of the written policies. However, there are factual allegations that Anderson & Wood's owners and managers continuously disregarded its written policy against operating company vehicles after consuming alcohol, as well as other substance abuse related policies.

After the accident, Dixon continued to be employed by Anderson & Wood. Approximately eight days after the accident, Anderson & Wood notified Dixon in writing that he could no longer use a company vehicle to go to and from work and could not use a company vehicle for personal use, but still allowed him to operate a company vehicle while on the job at the company's Washington project. After the Washington job was completed, Dixon's employer prohibited him from operating their vehicles.

National Union and Anderson & Wood entered into a contract effective June 1, 1996 to June 1, 1997. At issue in this case is an umbrella policy, not the minimum insurance coverage required by I.C. § 49–117(18). The declarations page of the National Union Policy identifies the named insured as "Anderson & Wood Construction Co., Inc." The contract provides in pertinent part as follows:

I. Coverage

We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

. . . .

IV. Definitions

. . . .

E. Insured means each of the following to the extent set forth:

. . . .

5. Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

. . . .

8. Any person (other than your partners, executive officers, directors, stockholders, or employees) or organization with respect to any auto owned by you, loaned to you or hired by you or on your behalf and used with your permission.

National Union filed this declaratory action on May 21, 2003, alleging it had no duty to defend or indemnify Dixon in connection with the underlying action (the wrongful death suit) because Dixon had no rights under the insurance contract. The district court agreed and found that Dixon was not acting within his duties at the time of the accident. Dixon timely appealed.

## ISSUES ON APPEAL

I. Did the district court err in granting summary judgment finding that Dixon was not acting within his duties when the accident occurred?

II. Is the National Union insurance policy illusory?

III. Is National Union entitled to attorney fees and costs on appeal?

## STANDARD OF REVIEW

 Summary judgment shall be rendered if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). On review this Court construes the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences and conclusions in that party's favor. *Hardy v. McGill*, 137 Idaho 280, 285, 47 P.3d 1250, 1255 (2002). Where there are no disputed issues of material fact, only a question of law remains, and this Court exercises free review. *Construction Management Systems, Inc. v. Assurance Co. of America*, 135 Idaho 680, 682, 23 P.3d 142, 144 (2001).

## ANALYSIS

I. DIXON WAS NOT ACTING WITHIN HIS DUTIES WHEN THE ACCIDENT OCCURRED AND THEREFORE THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT.

 This controversy concerns the interpretation of National Union's insurance policy and whether, given the set of facts in this case, it extends coverage to Dixon. If the insurance policy is clear and unambiguous, the determination of the insurance policy's meaning and legal effect are questions of law. *City of Idaho Falls v. Home Indem. Co.*, 126 Idaho 604, 607, 888 P.2d 383, 386 (1995). The meaning of the insurance policy and the intent of the parties must be determined from the plain meaning of the insurance policy's own words. *Id.* This Court is being asked to determine if the definition of insured as defined in National Union's insurance policy is ambiguous. The phrase in dispute is "[a]ny ... employees but only while acting within their duties."

Just last year a Pennsylvania court had the opportunity to interpret this exact language involving the respondent herein, National Union. The Pennsylvania court recognized that National Union did not define the term or the phrase "acting within their duties" in the policy. *Leggett v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 844 A.2d 575, 577–78 (Pa.2004). The *Leggett* court rejected National Union's argument that the phrase was synonymous with the term "course and scope of employment." *Id.* at 578. The court stated that if the insurance company wanted "an exclusion defined under the term of art 'within the course and scope of employment,' they would have used the term 'within the course and scope of employment' rather than saying the insured had to be 'acting within [his/her] duties.'" *Id.* The court also declined National Union's argument for a narrower interpretation of the phrase "acting within their duties." The *Leggett* court used the common ordinary meaning of the term as defined in WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1990) and BLACK'S LAW DICTIONARY. *Id.* at 578.

 This Court has stated that "[w]ords in an insurance policy that have a settled legal meaning are not ambiguous merely because the policy does not contain a definition." *North Pacific Ins. Co. v. Mai*, 130 Idaho 251, 253, 939 P.2d 570, 572 (1997). Moreover, "not every word and phrase in an insurance contract needs to be defined in the contract." *Perry v. Farm Bureau Mut. Ins. Co. of Idaho*, 130 Idaho 100, 102, 936 P.2d 1342, 1344 (Ct.App.1997). "Where the policy language is clear and unambiguous, however, coverage must be determined in accordance with the plain meaning of the words used." *Mutual of Enumclaw Ins. Co. v. Roberts*, 128 Idaho 232, 235, 912 P.2d 119, 122 (1996). Duty is defined as "obligatory tasks, conduct, service, or functions that arise from one's position (as in life or in a group)." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 360 (10th ed.1993). The latest version of BLACK'S LAW DICTIONARY 543 (8th ed.2004), defines "duty"

as "[a] legal obligation that is owed or due to another and that needs to be satisfied; an obligation for which somebody else has a corresponding right."

■ As a matter of law, this Court holds there is no ambiguity in the phrase "while acting within their duties." Therefore, the question becomes whether the district court erred in granting summary judgment finding the undisputed facts were as a matter of law that Dixon was not acting within his duties when the accident occurred.

■ The issue in this case is not the company policy concerning alcohol or drugs, as there were conflicting issues of fact concerning the efficacy of those rules. The issue is whether under this set of facts was Dixon furthering his employer's interests. Dixon drove the company vehicle into town to refuel for a business trip to occur the following day. Dixon did have an obligation to fill the company vehicle with gas. Dixon, completing an obligatory task or performing a service for his employer, was acting within his duties when he drove the vehicle into New Meadows to fill it with fuel. However, when Dixon decided to visit two bars and a friend's home he clearly abandoned his employer's objectives and any service remotely connected to his employer. Dixon was not going to work or coming from work after he fueled the company vehicle. Nor was Dixon off at a remote job site at the time the accident occurred. There is no evidence that Dixon returned to any activity remotely connected with his duties of employment. The fact that Dixon was driving home from his frolic did not reengage Dixon into acting within his duties for his employer. The district court did not err in granting summary judgment because as a matter of law Dixon was not acting within his duties at the time of the accident.

The Court declines to rely on the worker's compensation cases cited in the briefing as an insurance policy is an adhesionary contract and therefore different legal principles apply than the statutorily derived worker's compensation scheme.

## II. THE NATIONAL UNION INSURANCE POLICY IS NOT ILLUSORY.

■ Dixon claims by use of the definitions and exclusions this umbrella policy creates an illusion of coverage for employees permissively using company vehicles issued to them on a full-time basis as part of their employment, and therefore violates public policy. Dixon contends it was reasonable to believe he was covered under the policy while using the vehicle for personal reasons and for personal use. He argues that pursuant to I.C. § 41–1323 the Idaho Legislature enacted a law that prohibits insurance companies from selling illusory insurance policies. Additionally, Dixon asserts that if any actual coverage does exist it is minimal and affords no realistic protection to any group or class of injured persons.

Idaho Code § 41–1323 provides in part "No person shall willfully collect any sum as premium or charge for insurance, which insurance is not then provided or is not in due course to be provided (subject to acceptance of the risk by the insurer) by an insurance policy issued by an insurer as authorized by this code." "This statute is meant to address the fraudulent collection of premiums by a person who does not intend to provide an insurance policy to the person paying the premium." *Vincent v. Safeco Ins. Co. of America*, 136 Idaho 107, 111, 29 P.3d 943, 947 (2001). The person paying the premium in this case was not Dixon, but instead was his employer. Dixon's employer was provided with an insurance policy and some type of coverage. *See id.* The statute is inapplicable to the present case.

■ Unambiguous contracts that violate public policy are illegal and unenforceable. *American Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 399, 94 P.3d 699, 704 (2004). When a policy only provides an illusion of coverage for its premiums the policy will be considered void for violating public policy. *Vincent*, 136 Idaho at 111–12, 29 P.3d at 947–48; *Martinez v. Idaho Counties Reciprocal Management Program*, 134 Idaho 247, 252, 999 P.2d 902, 907 (2000). An insurance policy's coverage is illusory if

it appears that if any actual coverage does exist it is extremely minimal and affords

no realistic protection to any group or class of injured persons. The declarations page of the policy contains language and words of coverage, then by definition and exclusion takes away the coverage. The fact that there might be some small circumstance where coverage could arguably exist does not change the reality that, when the policy is considered in its entirety, the City was receiving only an illusion of coverage for its premiums. This Court will not allow policy limitations and exclusions to defeat the precise purpose for which the insurance is purchased.

*Martinez,* 134 Idaho at 252, 999 P.2d at 907. Thus the question is whether the insurance policy affords realistic protection of any group or class of injured persons. *See Vincent,* 136 Idaho at 112, 29 P.3d at 948.

The provision and exclusion in dispute is "employees ... but only while acting within their duties." The definition of who is an insured under this policy is not like the exclusion provisions found in the *Martinez* case where it appeared coverage was being provided to a defined group of insured, but then an exclusion provision removed any coverage to the insured. The coverage found in this case simply limits the coverage to employees while acting in their duties. This is not an illusory coverage. Dixon would have been covered under the policy had he been acting within his duties. The coverage provided by this policy is not minimal and it does provide realistic protection to those defined as insured. The insurance policy is not illusory.

■ Dixon also contends that because there is a conflict in defining insured as provided in sections five and seven, the policy as applied to him is illusory. Insured's are also defined by section seven, which provides in part, "Any person (other than ... employee) ... with respect to any auto owned by you, loaned to you or hired by you or on your behalf and used with your permission." The clear language of the policy excludes any employee in this section. There is no conflict with the two sections. Section five applies to employees and employees will be covered if they are acting within their duties. Section seven provides additional coverage for Anderson & Wood when other individuals,

not covered by section five, are driving their vehicles. The two definitions do not render the insurance policy illusory.

## III. NO ATTORNEY FEES ON APPEAL.

■ National Union requests attorney fees and costs on appeal pursuant to I.C. § 12–121. An award is appropriate pursuant to I.C. § 12–121 if the Court is left with the abiding belief that the appeal was brought or defended frivolously, unreasonably or without foundation. *Vendelin v. Costco Wholesale Corp.,* 140 Idaho 416, 434, 95 P.3d 34, 52 (2004). When there are fairly debatable questions attorney fees are not awardable pursuant to this statute. *Black v. Ameritel Inns, Inc.,* 139 Idaho 511, 81 P.3d 416, 420 (2003). Cases of first impression do not constitute an area of settled law. *Purco Fleet Services, Inc. v. Idaho State Dept. of Finance,* 140 Idaho 121, 127, 90 P.3d 346, 352 (2004). Attorney fees are not awarded to National Union pursuant to I.C. § 12–121 because the appeal was not brought or defended frivolously, unreasonably or without foundation.

National Union also request attorney fees pursuant to I.C. § 10–1210 because other states have interpreted the exact same language in their statutes to include attorney fees as part of costs.

■ Idaho Code § 10–1210 provides "In any proceeding under this act the court may make such award of costs as may seem equitable and just." In a recent opinion we discussed I.C. § 10–1210 and stated:

[t]he general rule is that costs do not include attorney fees unless attorney fees are expressly included in the definition of the term costs. The legislature's awareness of this rule is demonstrated by its authorization of awards of costs and attorney fees. When the legislature has intended that the term costs cover attorney fees, it has so provided.

*Freiburger v. J–U–B Engineers, Inc.,* Docket No. 30104, WL 674207 (March 24, 2005). Idaho Code § 10–1210 does not provide authority to award attorney fees in a declaratory action. In *Freiburger* we held that other statutory provisions were available in a de-

claratory action for an award of attorney fees. *Id.* Therefore, National Union is not entitled to attorney fees pursuant to I.C. § 10–1210.

## CONCLUSION

The district court's order granting the motion for summary judgment and declaratory judgment is affirmed. The material facts are not in dispute and as a matter of law Dixon was not acting within his duties and therefore was not an insured under the policy. The policy is unambiguous and not illusory. Costs to National Union.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES concur.