J-A15018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| OLD REPUBLIC INSURANCE COMPANY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MATTHEW STEVENS AND ALEXANDRA KOBRICK | |
| APPEAL OF: ALEXANDRA KOBRICK | |
| Appellant | No. 1903 MDA 2016 |

Appeal from the Order Entered October 19, 2016
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 15-CV-2706

BEFORE: MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY SOLANO, J.:                **FILED NOVEMBER 14, 2017**

Appellant Alexandra Kobrick appeals from the default judgment entered in favor of Appellee Old Republic Insurance Company in a declaratory judgment action regarding insurance coverage for defendant Matthew Stevens in a federal civil rights action that Appellant brought against Stevens ("the Kobrick Suit"). We affirm.

On November 25, 2013, Appellant sued Stevens in the United States District Court for the Middle District of Pennsylvania.[1] Stevens was a music teacher and band director in the Lakeland School District. In addition to Stevens, Appellant's complaint named Lakeland as a defendant, along with

_____

[1] Docket No. 3:13-cv-02865-MEM.

Lakeland's superintendent (Dr. Margaret Billings-Jones) and principal (Thomas Kameroski). Compl. in the Kobrick Suit, 11/25/13, at 2-3, 5-6 ¶¶ 8-14, 28-39.[2]

In the complaint, Appellant averred that Stevens sexually assaulted her. The complaint alleged:

> 32. At all relevant times hereto, Plaintiff Alexandra Kobrick was a participant in the band and a student of Defendant Matthew Stevens at Lakeland Junior-Senior High School.
>
> 33. In or about December, 2011 – January, 2012, Defendant Matthew Stevens sent Plaintiff Alexandra Kobrick a series of inappropriate text messages of a sexual and flirtatious nature.
>
> 34. By January, 2012, the relationship between Defendant Stevens and Plaintiff became physically sexual in nature.
>
> 35. In January, 2012, Defendant Stevens and Plaintiff were alone in Defendant Stevens' office when Defendant Stevens kissed Plaintiff and instructed Plaintiff that she should tell no one else about the contact.
>
> 36. After these initial sexual advances occurred, Defendant Stevens would thereafter take Plaintiff into a "drum closet" in the band area on the premises at Lakeland Junior-Senior High School and would engage in sexual contact with the Plaintiff, who was a minor and his student at the time.
>
> 37. Defendant Stevens continued the sexual advances, which included Stevens touching Plaintiff's breasts and genitalia both over and under her clothing, digitally penetrating Plaintiff's vagina, performing oral sex on Plaintiff, and directing and having Plaintiff to perform oral sex on him. Such sexual contact occurred in the drum closet, back stage in the auditorium and other locations on Defendant Lakeland School District property.

---

[2] Appellant also sued another school, Western Wayne School District, and some of its officials. The allegations against Western Wayne are not relevant here.

38. Defendant Stevens' abuse of the Plaintiff occurred during school hours and when Plaintiff stayed after school on the premises owned, controlled and maintained by Defendant Lakeland School District. The inappropriate activity and abuse continuously occurred approximately 2-3 times per week from January 2012 until the end of the school year, and beyond.

Compl. in the Kobrick Suit, 11/25/13, at 5-6 ¶¶ 32-38. Appellant alleged that Stevens' conduct caused her psychological damage, physical harm, and emotional distress. *Id.* at 17 ¶ 66, at 30 ¶ 125, at 32 *ad damnum* clause, at 39 ¶¶ 157-58, 161. The complaint stated six counts against Stevens:

• Count I: Violation of the Civil Rights Act, 42 Pa. C.S. § 1983, for infringement of her rights to due process, personal security, bodily integrity, and freedom from illegal seizures.

• Count II: Assault.

• Count III: Battery.

• Count VIII: Violation of Article 1, Section 1 of the Pennsylvania Constitution by "intentionally and deliberately violat[ing] Plaintiff's due process rights."

• Count X: Sexual and simple assault.

• Count XIV: Intentional infliction of emotional distress.

*Id.* at 16-20, 29-32, 38-40 ¶¶ 59-76, 123-25, 130-34, 156-61. Appellant sought damages in excess of $75,000.

Lakeland has insurance coverage under a Leaders' Legal Liability Policy that was issued to it by Old Republic, with effective dates of July 1, 2013 to July 1, 2014 ("Policy"). The Policy states that Old Republic "will pay on

behalf of the INSURED[3] all sums . . . that the INSURED becomes legally obligated to pay for LOSS as a result of a CLAIM against the INSURED by reason of WRONGFUL ACT(S) to which this insurance applies." Policy at 1 § I. It defines the "INSURED" to include "All EMPLOYEES . . . while acting within the scope of their duties for [Lakeland] and under its direction and control[.]" *Id.* at 8-9 § IV ¶ 3. The parties do not dispute that Stevens was employed by Lakeland, though they do dispute whether his actions relevant to this case occurred "while acting with the scope of [his] duties" at Lakeland. A "LOSS" under the Policy is "any monetary damages for judgments or settlements . . . for the recovery of sums that are covered under this policy." *Id.* at 7 § III. A "CLAIM" is a "written notification received by any INSURED requesting money damages that qualify as a LOSS," including a civil litigation claim. *Id.* at 6 § III. "WRONGFUL ACT(S)" means "any alleged or actual act, error, misstatement, misleading statement or omission of an INSURED in the scope of its duties[.]" *Id.* at 8 § III.

The Policy contains several exclusions, including the following:

This Insurance does not apply to and WE shall not be obligated to make any payment of LOSS, defend any SUIT or pay SUPPLEMENTARY PAYMENTS in connection with any Claim for, arising out of, caused by, resulting from, in consequence of, in connection with or in any way involving any of the following:

. . .

2. Any WRONGFUL ACT that is **committed with an improper purpose or intended to cause LOSS**;

---

[3] Fully capitalized words are defined terms in the Policy.

. . . .

4.     For any CLAIM other than an EMPLOYMENT CLAIM, **bodily injury**, sickness, disease, death, disability, shock, humiliation, embarrassment, mental injury, **mental anguish**, **emotional distress**; oral or written publication, in any manner of material that slanders or libels a natural person or organization or disparages a person's or organization's goods, products or services; or for damage to or destruction of any property, tangible or intangible, including diminution of value or loss of use.  **This exclusion applies whether any of the aforementioned injury or damage is caused by the INSURED or by any other natural person**, organization, or legal entity, or such injury **or damage arises out of or is caused by intentional, reckless, or negligent acts, errors or omissions and regardless of the legal theory pled (including civil rights violations)**;

For any EMPLOYMENT CLAIM, . . . .

5.     False arrest, detention or imprisonment; malicious prosecution; wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a natural person occupies, committed by or on behalf of its owner, landlord or lessor; oral or written publication, in any manner, or material that violates a person's right to privacy; **assault**; **battery**; false or improper service of process; trespass; nuisance; or violation of any natural person's right to person's or organization's intellectual property rights. . . .

Policy at 2-3 § II ¶¶ 2, 4-5.

Upon being notified of the Kobrick Suit, Old Republic agreed to provide a defense to Stevens, Lakeland, Billings-Jones, and Kameroski, subject to a full reservation of rights under the Policy.  Old Republic appointed counsel to represent Lakeland, Billings-Jones, and Kameroski, and separate counsel to represent Stevens.

On June 16, 2014, Stevens pled guilty to one count of corruption of minors in connection with his misconduct regarding Appellant.   Upon

- 5 -

learning of the guilty plea, Old Republic sent an updated reservation of rights letter to Stevens that advised that Old Republic would not defend or indemnify him in connection with Appellant's lawsuit. Then, on April 16, 2015, Old Republic filed this declaratory judgment action, naming as defendants Stevens, Lakeland, Billings-Jones, Kameroski, and Appellant. The action sought a declaration that Old Republic had no obligation to defend or indemnify Stevens in connection with the Kobrick Suit and that it should be allowed to withdraw its defense of Stevens in that action. Lakeland, Billings-Jones, and Kameroski were dismissed from the instant action pursuant to joint stipulations. Appellant filed an answer contending that Old Republic had a duty under the Policy to defend or indemnify Stevens, because Stevens' actions were committed within the scope of his duties and were not barred by any exclusion. Stevens did not respond to the complaint.

Because Stevens filed no response, Old Republic filed a praecipe to enter a default judgment against him. A default judgment was entered on September 21, 2015, and Old Republic then moved for the trial court to enter a final order declaring that Old Republic had no duty to defend or indemnify Stevens in connection with Appellant's suit. Appellant opposed that motion. After receiving written submissions and hearing oral argument, the trial court granted Old Republic's motion on October 19, 2016.

In reaching its decision, the trial court first reviewed Pennsylvania case law holding that sexual abuse of children is irrebuttably presumed to be an

intentional act. Trial Ct. Op. at 6-7 (citing *Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 356 (Pa. Super. 1996); *Aetna Cas. & Sur. Co. v. Roe*, 650 A.2d 94, 102 (Pa. Super. 1994)). The trial court then continued:

> Pursuant to the inferred intent rule laid out above, Stevens['] alleged actions must be determined as intentional. Therefore, Defendant Stevens is barred from coverage based on the subject Policy's clearly stated intentional wrongful acts exclusion, the bodily injury or emotional distress exclusion and the assault and battery exclusion.
>
> Moreover, any sexual assault or corruption of [Appellant] did not occur while Stevens was acting within the scope of his duty as Lakeland's band director, which is required to be included as an insured under the Policy. In other words, no causal connection exists between teaching band students and the injuries suffered by [Appellant], who was sexually assaulted by Stevens while she was his student. None of the allegations raised in the Kobrick Suit pertain to injuries which are actually or potentially within the scope of the Policy[.] . . . Plainly stated, Old Republic never agreed to provide insurance coverage to Stevens for the injuries that resulted from the sexual assault of a minor. Thus, Stevens is not an insured with regard to the Policy.

*Id.* at 7-8.

On November 18, 2016, Appellant appealed, and she now raises the following issues:

> 1. Whether the trial court erred in terminating [Appellant]'s interest in the Declaratory Judgment Action based on the entry of default judgment against Matthew Stevens, a co-defendant in the declaratory judgment action.
>
> 2. Whether the trial court's determination that [Appellee] Old Republic [] has no duty to indemnify and/or defend Defendant Matthew Stevens in [Appellant]'s underlying lawsuit filed against him and others was premature, as discovery on the issue of Old Republic's duty to defend and indemnify Defendant Matthew Stevens was ongoing and not concluded.

3.     Whether the trial court erred in holding that [Appellee] Old Republic [] has no duty to indemnify and/or defend Defendant Matthew Stevens, where the provisions cited by Old Republic in its insurance policy are inapplicable, ambiguous, and/or illusory.

4.     Whether the trial court erred in holding that [Appellee] Old Republic [] has no duty to indemnify and/or defend Defendant Matthew Stevens.

Appellant's Brief at 4.

"Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law." *Peters v. Nat'l Interstate Ins. Co.*, 108 A.3d 38, 42 (Pa. Super. 2014) (citation omitted), *appeal denied*, 124 A.3d 309 (Pa. 2015).

**Propriety of Default Judgment**

Appellant first contends that Old Republic's motion for entry of a final order for a default judgment against Stevens should have been denied because she "is an interested party with standing to have **her** rights declared regardless of Matthew Stevens['] failure to respond to [Old Republic]'s complaint." Appellant's Brief at 12 (emphasis added). Appellant argues that Stevens' "failure to respond to Old Republic's Complaint cannot bar [Appellant]'s right to defend." *Id.* at 15. She continues:

Old Republic fails to acknowledge that notwithstanding Mr. Stevens['] failure to file a Response to its Declaratory Judgment Complaint, [Appellant,] as an injured party, has an interest in this litigation and her standing to litigate the issues raised in her answer to Old Republic's Declaratory Judgment Complaint cannot be diminished by Mr. Stevens' failure to respond to Old Republic's Complaint. . . . The Pennsylvania Supreme Court in *Allstate Insurance Company v. Stinger*,

400 Pa. 533, 537, 163 A.2d 74 (1960)[,] held that an injured party is affected by a policy of insurance between an insurance company and its insured. . . . [Appellant] in this action is undeniably an interested party and is entitled to have her rights declared.

*Id.* at 13.

Old Republic responds that "the trial court properly entered judgment when it did." Old Republic's Brief at 36. It points out that, contrary to Appellant's assertion, it "has not challenged whether Appellant has standing to present a case or defense." Old Republic's Brief at 40. "To the contrary, Old Republic joined Appellant in this case, served Appellant with the Motion for Judgment and afforded Appellant an opportunity to oppose that Motion, which Appellant did — both by submitting her Response and Brief and arguing against the Motion at the October 2016 hearing." *Id.* at 40-41.

The trial court said it relied upon Appellant's written response to Old Republic's motion and the "oral argument between parties' counsel on the motion." Order, 10/19/16; *see also* Trial Ct. Op. at 2. It added that it thoroughly considered Appellant's arguments about the proper interpretation of the Policy and rejected them. *See id.* at 5-8.

We conclude that Appellant is not entitled to relief on this issue. Appellant had a complete opportunity to defend her interests in this matter. She was named as a defendant in Old Republic's complaint, filed an answer, and opposed Old Republic's motion for a default judgment. She thus was treated by the trial court as "an interested party with standing to have her rights declared" regardless of Stevens' inaction. *Cf.* Appellant's Brief at 12.

The trial court considered whether Stevens was covered by the policy and, despite Appellant's arguments, concluded that he was not covered and that Old Republic was not obligated to defend or indemnify Stevens. However, that does not mean that Appellant was deprived of her interest in this litigation; she was heard.

Appellant's reliance on **Allstate Ins. Co. v. Stinger**, 163 A.2d 74, 76 (Pa. 1960), is misplaced. The claimants in that case complained that they had not been allowed to intervene in a declaratory judgment action that affected them, and the Supreme Court agreed that their intervention should be allowed. Here, unlike the claimants in **Stinger**, Appellant was named as a party in the declaratory judgment action from the outset. She responded to the pleadings, and had over a year to conduct discovery (which she chose not to do), before Old Republic filed its motion for a final order.[4] Appellant has not explained how her ability to participate in this case has been prejudiced. She therefore has not established an entitlement to relief.

## Coverage of Stevens Under the Policy

Appellant's remaining issues all boil down to her contention that the trial court should have held that Stevens is covered under the Old Republic Policy or, at the least, should have deferred ruling on that question while additional discovery was taken. We disagree.

---

[4] Nothing in the certified record or in Appellant's brief indicates that Appellant served discovery on Old Republic. Old Republic states that, although it served discovery requests on Appellant, "[Appellant] did not serve any discovery requests on Old Republic." Old Republic's Brief at 10-11. Appellant did not file a reply brief contradicting this assertion.

It is well established that an insurer's duty to defend and indemnify an insured may be determined in a declaratory judgment action. **See Claypoole**, 673 A.2d at 355. In doing so, "the allegations raised in the underlying complaint alone fix the insurer's duty to defend. . . . The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint." **Penn-Am. Ins. Co. v. Peccadillos, Inc.**, 27 A.3d 259, 265 (Pa. Super.) (*en banc*) (citation and internal quotation marks omitted), **appeal denied**, 34 A.3d 832 (Pa. 2011); **see also State Farm Fire & Cas. Co. v. DeCoster**, 67 A.3d 40, 45 (Pa. Super. 2013) (same); **Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.**, 2 A.3d 526, 541 (Pa. 2010) ("As long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend").

"Words of common usage in an insurance policy are to be construed in their natural, plain and ordinary sense, and we may inform our understanding of these terms by considering their dictionary meanings." **Leggett v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.**, 844 A.2d 575, 578 (Pa. Super. 2004), **aff'd**, 874 A.2d 1159 (Pa. 2005) (order). In addition:

> When the language of the policy is clear and unambiguous, we must give effect to that language. However, when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage.

- 11 -

*Penn-Am.*, 27 A.3d at 265 (citations and internal brackets and quotation marks omitted).

Appellant contends that the provisions of the Policy on which Old Republic relies to disclaim coverage "are inapplicable, ambiguous, and/or illusory." Appellant's Brief at 19; *see also id.* at 20 (citing *Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh v. Nat'l Union Fire Ins. Co.*, 709 A.2d 910, 913 (Pa. Super.) ("An insurer who disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion"), *appeal denied*, 727 A.2d 126 (Pa. 1998)). In this connection —

> A contract term or provision may properly be deemed ambiguous if reasonable minds can differ as to its meaning. While the court will not allow an overly-subtle or technical interpretation to defeat the reasonable expectations of the insured, it will not convolute the plain meaning of a writing merely to find an ambiguity.

*O'Brien Energy Sys., Inc. v. Am. Employers' Ins. Co.*, 629 A.2d 957, 960 (Pa. Super. 1993).

Much of Appellant's argument concerns whether Stevens was an "INSURED" under the Policy, and, in particular, whether he was "acting within the scope of [his] duties for [Lakeland] and under its direction and control" when he abused Appellant. Appellant contends that "Stevens . . . committed a Wrongful Act towards [Appellant] 'while acting within the scope of his duties' as a music teacher." Appellant's Brief at 25. She continues:

> [T]he [t]rial [c]ourt wrongly cited to an exclusion of coverage for intentional acts and applied that exclusion to the Insured

definition phrase "**while** acting within the scope of his duties" to hold that Mr. Stevens was not an Insured. . . . Had the [t]rial [c]ourt properly looked at the policy definition of "Insured," without wrongly adding an intentional acts exclusion, the [t]rial [c]ourt could only hold that Mr. Stevens was an Insured Employee who committed a Wrongful Act of sexual activity "**while** acting within the scope of his duties" teaching [Appellant] music.

Here, Old Republic's insurance policy has no definition for what is meant by "**while** acting within the scope of (his) duties." The [trial c]ourt may not add an exclusion for intentional acts to the phrases in the policy. If [Appellant]'s above interpretation of the phrase "**while** acting within the scope of his duties" given the underlying facts of abuse does not correctly define Mr. Stevens as an Insured Employee, then the phrase "**while** acting within the scope of his duties" is ambiguous, and must be construed in favor of coverage.

Appellant's Brief at 25, 27-28 (emphasis in original). Appellant argues that a "common definition of 'scope of duties' does not support the [t]rial [c]ourt's holding that Matthew Stevens is not an Insured," because this "common definition" "includes the range of duties that an employee is expected to carry out in order to fulfill the requirements of the position." *Id.* at 10 (citing *Black's Law Dictionary*, 2d Ed. online), 29.

Old Republic answers that the trial court properly granted its motion for declaratory judgment by correctly declaring that it has no duty to defend or to indemnify Stevens. Old Republic's Brief at 15. Old Republic continues that "there are no material facts in dispute" and that "Stevens is not an 'insured,'" as "his admitted actions occurred outside the scope of his employment." *Id.* at 17-18.

We begin by observing that the trial court correctly interpreted and applied our insurance decisions regarding the intentional nature of sexual assault. In **Aetna**, we adopted the "inferred intent rule" previously articulated by the Court of Appeals for the Third Circuit in **Wiley v. State Farm Fire & Cas. Co.**, 995 F.2d 457 (3d Cir. 1993). We summarized:

> [The Third Circuit] stated that in certain cases a court can infer an actor's intent as a matter of law from the nature and character of his or her acts. In its thorough review of current Pennsylvania law on the question of intent as well as a survey of the analyses applied in other jurisdictions in child abuse cases, the Court in **Wiley** noted that the inferred intent to harm is an irrebuttable presumption. The criminalization of child abuse additionally serves to place the insured on notice of the societal understanding that the harm from such conduct is inseparable from its performance. The court concluded that "harm to children in sexual molestation cases is inherent in the very act of sexual assault committed on a child, regardless of the motivation for or nature of such assault, and that the resulting injuries are, as a matter of law, intentional. . . ." We agree.

**Aetna**, 650 A.2d at 102 (citations omitted). "[P]ursuant to the inferred intent rule, injuries resulting from sexual assault committed on children in cases of sexual molestation are intentional as a matter of law." **Claypoole**, 673 A.2d at 356.

As the trial court correctly determined, the inferred intent rule resolves this case. Appellant accuses Stevens of sexually abusing her while she was a child in the school band. She asserts various claims against Stevens, including constitutional claims, assault and battery, and intentional infliction of emotional distress; but for each, the gravamen of the claim, as revealed

- 14 -

by the four corners of the federal complaint, was Stevens' sexual abuse of Appellant. As a matter of law, that conduct was intentional.

Under the clear terms of the Old Republic's Policy, such intentional conduct was excluded from coverage. The Policy unambiguously states:

> This Insurance does not apply to and WE shall not be obligated to make any payment of LOSS, defend any SUIT or pay SUPPLEMENTARY PAYMENTS in connection with any Claim for, arising out of, caused by, resulting from, in consequence of, in connection with or in any way involving any of the following:
>
> . . .
>
> 2.    Any WRONGFUL ACT that is committed with an improper purpose or intended to cause LOSS [a term defined in the Policy to include "any monetary damages"].

As we observed in **Claypoole**, insurance policies typically "exclude insurance coverage for injuries resulting from intentional acts," 673 A.2d at 356, and the Old Republic policy is no exception. We add that other Policy clauses further confirm that Appellant's claims against Stevens are not covered, including the exclusions for "assault" and "battery" and for non-employment claims seeking recovery for "bodily injury," "mental anguish," and "emotional distress." The latter exclusion specifically applies although the damage "arises out of or is caused by intentional . . . acts, errors or omissions and regardless of the legal theory pled (including civil rights violations)."

The clear applicability of the exclusions makes it unnecessary to explore questions about Stevens' status as an "INSURED" who was "acting within the scope of [his] duties" for Lakeland. Appellant's argument tries to

- 15 -

blend questions about the exclusions and Stevens' scope of duties, accusing the trial court of "wrongly cit[ing] to an exclusion of coverage for intentional acts and appl[ying] that exclusion to the Insured definition phrase 'while acting within the scope of his duties' to hold that Mr. Stevens was not an Insured." Appellant's Brief at 10. That is not what the trial court did. Rather, after holding that coverage was barred under the Policy's exclusions, the trial court separately added that "any sexual assault or corruption of [Appellant] did not occur while Stevens was acting within the scope of his duty as Lakeland's band director," as sexual assault is not a part of a band director's duties. Trial Ct. Op. at 7. We find no error in that separate common-sense holding,[5] but even if we were to agree with Appellant that Stevens sexually assaulted her while in the course of his duties as a band director, it would not matter. The Policy still excludes intentional wrongful acts, even if they are committed by a covered "INSURED."

Finally, because the dispositive terms of the Policy are clear and lack of coverage may be determined as a matter of law, the trial court's decision

_____

[5] In various contexts, we have construed an employee's scope of duties similarly. *See, e.g.*, *Spitsin v. WGM Transp., Inc.*, 97 A.3d 774, 776 (Pa. Super. 2014) ("If an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment" (citing Restatement (Second) of Agency § 228)); *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 699-700 (Pa. Super. 2000) (same); *see also Leggett*, 844 A.2d at 577-78 (defining "duty" in insurance clause relating to "acting within his duties" to mean "Obligatory tasks, conduct, service or functions that arise from one's position (as in life or in a group)," quoting" *Webster's Ninth New Collegiate Dictionary* (1990)).

in this case was not premature. There was no need to await discovery or further proceedings on the issue.

In sum, after a thorough review of the record and based upon the case law, we agree with the trial court that the Policy issued by Old Republic does not cover Stevens for the acts alleged in Appellant's complaint against him in the Kobrick Suit. Consequently, Old Republic has no duty to indemnify or to defend Stevens in the Kobrick Suit. As we conclude the trial court did not abuse its discretion or err as a matter of law in entering a declaratory judgment in favor of Old Republic, we affirm. ***See Peters***, 108 A.3d at 42.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2017